**Howard Dean SULLIVAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 667–84.**

Court of Criminal Appeals of Texas, En Banc.

Jan. 8, 1986.

John A. Buckley, Jr., Galveston, for appellant.

Louis Raffaelli, Dist. Atty., David W. Malaby, Jr., Asst. Dist. Atty., Texarkana, Robert Huttash, State's Atty., Cathleen R. Riedel, Asst. State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Judge.

Appellant was convicted of two counts of theft over $200.00. Punishment was assessed at four years' on each count, probated. The Texarkana Court of Appeals affirmed appellant's conviction in an unpub-lished opinion. *Sullivan v. State*, No. 6–83–091–CR, delivered April 10, 1984 (Tex. App.—Texarkana 1984). In its opinion the court relied on the rule that an owner of personal property may testify to the property's market value even though he does not qualify as an expert. We granted appellant's petition for discretionary review to examine that rule as applied to this case and specifically the Court of Appeals' holding that the testimony of the owner was sufficient to prove the market value of the stolen property, a gun.

The second count of the indictment alleged that appellant:

"did unlawfully, knowingly and intentionally appropriate property, other than real property, to-wit: one 30–30 lever action rifle of the value of more than two hundred dollars and less than ten thousand dollars by exercising control over said property without the effective consent of David Lindsey, the owner of the property, and with intent to deprive said owner of said property."

V.T.C.A., Penal Code, Section 31.08(a) in pertinent part defines value in theft prosecutions as follows:

"(a) Subject to the additional criteria of Subsections (b) and (c) of this section, value under this chapter is:

(1) the fair market value of the property or service at the time and place of the offense; or

(2) if the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the theft.

.    .    .    .    .

"(c) If property or service has value that cannot be reasonably ascertained by the criteria set forth in Subsections (a) and (b) of this section, the property or service is deemed to have a value of more than $20 but less than $200."

At trial the owner of the gun, David Lindsey, testified that a 30–30 Winchester rifle and a Model 1100, Remington automatic shotgun were stolen from his home. When the prosecutor asked Lindsey to

state the value of the 30–30, the following occurred:

"Q.  At the time of this theft, do you have an idea about what the value of this gun was?

"MR. BUCKLEY:  Your Honor, I am going to object to his testifying about values until it is established . . .

"JUDGE CARTER:  Sustained.

"Q.  Do you collect guns, Mr. Lindsey?

"A.  No, sir.

"Q.  Do you have opportunity to look at guns very often, or check prices or do you shop them?

"A.  Oh, sometimes.

"Q.  Would that . . . do you think you have an idea of the current market prices around that time of guns of this nature?

"A.  Well, just a plain 30–30 Winchester . . .

"Q.  Without saying . . . is this gun unusual?

"A.  Yes.

"Q.  Okay, why?

"Q.  It is the only one like it that I have ever seen.

"Q.  Alright, is it a special edition gun?

"A.  Yes.

"Q.  Because of its special nature, did you inquire during the time period that you owned this gun, particularly right around August and September, '82, what the current price of that gun might have been?

"A.  No.

"Q.  Okay, so you don't have any idea what the price of the gun would have been about the time it was stolen?

"A.  Well, no."

After further direct examination and cross-examination, a short recess was taken.  Thereafter the witness was called back to the stand by the State.  Then the following occurred:

"Q.  Mr. Lindsey, I would like to direct your attention to State's Exhibit No. 2, being the rifle that I showed you a little bit earlier, you said that is your property, is that correct?

"A.  Yes.

"Q.  You purchased it yourself?

"A.  Yes.

"Q.  As the owner of that property, do you have an opinion as to the value of that gun on the date it was stolen?

"MR. BUCKLEY:  Your Honor, again his personal opinion on the date the gun was stolen is not the market value, and I object to it.

"JUDGE CARTER:  I will overrule . . . as the owner of the gun, he is entitled to state an opinion.  Overruled.

"MR. MALABY:  (Continuing)

"Q.  Back in August or September of '82.

"JUDGE CARTER:  As to market value.

"MR. MALABY:  (Continuing)

"Q.  As the owner of that gun, do you have an idea as to what the market value of that gun was?

"A.  Since it has been fired and used, I would say Five Hundred Dollars ($500.00).

On cross-examination the following exchange then took place:

"Q.  That's why you placed it so high?

"A.  Yes.

"Q.  Because you just don't want to sell it?

"A.  *It's worth Five Hundred Dollars ($500.00) at least."* (Emphasis added).

At this point, appellant's attorney objected to this statement stating, "The value has to be between a willing seller and a willing buyer."  The judge overruled the objection.  Following the judge's ruling, appellant's attorney continued with the following:

"Q.  So when you testified this is what you'd take for it, that's what you're saying, that's what I'd take for it?

"A.  Yes.

"Q.  That's not any comparison with market value?  You don't know what this thing sells for out in the street . . . you don't know what it sold for back in September?

"A.  No."

At the close of the State's case the appellant moved for a directed verdict because the State had failed to produce evidence as

to the value of the gun other than the owner's opinion. Appellant's motion was denied. At the conclusion of the guilt innocence phase of the trial, appellant requested that the court instruct the jury.

"That if the fair market value of the property at the time and place of the offense cannot be reasonably ascertained the property is deemed to have a value of more than Twenty Dollars ($20) but less than Two Hundred Dollars (200)."

The court refused this instruction.

Appellant argues in his petition that Lindsey testified only as to the price he would ask if selling his gun, not the actual market value. Therefore there was no testimony as to the market value of the gun and his motion for directed verdict should have been granted or in the alternative the judge should have given his requested charge to the jury.

■ Appellant's argument raises an important consideration with regard to the proof of market value in theft cases: what standard constitutes a valid measure of "value" sufficient to establish jurisdiction in theft cases. V.T.C.A., Penal Code, Section 31.03. Appellant urges that value must be established either as the fair market value of the property at the time and place of its taking, or the purchase price of the property paid by the owner. The State has no apparent quarrel with this standard and only urges this Court to accept the proposition that the owner clearly testified as to the fair market value of the weapon in question.

It has long been the rule in this State that the owner of property is competent to testify as to the value of his own property. *Brown v. State*, 640 S.W.2d 275 (Tex.Cr. App.1982); *Davila v. State*, 547 S.W.2d 606 (Tex.Cr.App.1977); *Trammell v. State*, 511 S.W.2d 951 (Tex.Cr.App.1974); *Nitcholas v. State*, 524 S.W.2d 689 (Tex.Cr.App.1975); *Coronado v. State*, 508 S.W.2d 373 (Tex. Cr.App.1974). This rule applies both in criminal theft cases and in cases which involve only civil issues. *Barstow v. Jackson*, 429 S.W.2d 536 (Tex.1968).

Prior to the enactment of Section 31.08 of our present penal code, there were no statutory standards for determining the value of stolen property. The case law, however, shows that this Court had traditionally utilized fair market value, or alternatively replacement cost as a means of establishing value. *Turner v. State*, 486 S.W.2d 797 (Tex.Cr.App.1972); *De La O v. State*, 373 S.W.2d 501 (Tex.Cr.App.1963); *Senters v. State*, 163 Tex.Cr.R. 423, 291 S.W.2d 739 (1956). The effect of enacting Section 31.08 was to codify a standard for establishing value which had become law in our jurisdiction by virtue of stare decisis. See also, V.T.C.A., Penal Code, Section 31.-08, Practice Commentary. For this reason, case law decided prior to the implementation of the present penal code is relevant and persuasive authority on this subject.

It is settled that when the State seeks to establish the value of an item of property through the testimony of a non-owner the witness must first be qualified as having personal knowledge of the value of the property. Furthermore, to establish sufficient evidence of value the State must elicit testimony as to the fair market value of the property in question. See McCormick and Ray, Texas Law of Evidence, Section 1422 (1980); *Davila v. State*, supra; *Trammell v. State*, supra; *Turner v. State*, supra; *Nitcholas v. State*, supra.

We have held, however, that while fair market value must be established if the testimony concerning value is given by someone other than the owner, the owner is competent to testify as to value though he is not qualified as an expert on the value of the property. *Davila v. State*, supra. Indeed, in the case of *Israel v. State*, 158 Tex.Cr.R. 549, 258 S.W.2d 82 (1953), we held the owner's testimony that "to the best of my knowledge the car was valued at $575.00," was sufficient evidence to establish value. In the case of *Turner v. State*, supra, this Court held the evidence was sufficient to establish value when the owner testified that the property in question "was worth" a given amount and that they "would not take less than" a given amount for the property. *Turner v. State*, supra, at 799. See also, *Nitcholas v. State*, at 691.

Additionally, this Court has implicitly approved[1] the resolution of this issue which appears in *Houston v. State*, 636 S.W.2d 7 (Tex.App.—Corpus Christi, 1982), on remand from Court of Criminal Appeals, 652 S.W.2d 472 (Tex.App.—Corpus Christi 1983). In that case, the Corpus Christi Court of Appeals held:

> "... For an opinion of the worth of property by someone *other than the owner*, the prerequisite to admissibility is knowledge of the fair market value...." (Emphasis added).

We also find that the case of *Coronado v. State*, supra, is very nearly on point with the case before us. In *Coronado*, the defendant alleged that the evidence was insufficient to show the value of several stolen tools and a tool box. The owner of the property testified that he assessed the value of the tools at approximately one half of the purchase price. We held that this testimony, though in no way purported to be the "fair market value" of the tools, was sufficient to allow a rational trier of fact to assess the value of the property. *Coronado v. State*, supra, at 374.

Finally, in *Trammel v. State*, supra, the complainant testified to the effect that "you couldn't buy it [the property in question] for less than fifty." She then testified to the purchase price of the property. We held that:

> "... Though she never stated that the case market value of the television set was $50.00 in clear and precise language, her testimony was obviously meant to convey that idea and must have been so understood by the jury and appellant...." 511 S.W.2d at 954.

We find the holdings in the cases cited above to be controlling, especially when read together.

Thus, there seems to be two corollaries to the rule regarding proof of value. When the proof of value is given by a non-owner, the non-owner must be qualified as to his knowledge of the value of the property and must give testimony explicitly as to the fair market value or replacement value of the property.

However, when the owner of the property is testifying as to the value of the property, he or she may testify as to his or her opinion or estimate of the value of the property in general and commonly understood terms. Testimony of this nature is an offer of the witness' best knowledge of the value of his property. Such testimony will constitute sufficient evidence for the trier of fact to make a determination as to value based on the witness' credibility. This is true even in the absence of a specific statement as to "market value" or "replacement value."

When an owner testifies, the presumption must be, as the rule in *Trammell* states, that the owner is testifying to an estimation of the fair market value. Certainly the owner may reasonably be understood to be testifying as to the fair market value of the property either in terms of the purchase price or the cost to him of replacing the stolen property. To hold otherwise would be to make the wholly unwarranted presumption that the owner is basing his estimate on sentimental value. This is a presumption this Court will not entertain for obvious reasons.

If the appellant wishes to rebut the owner's opinion evidence he must do more than merely impeach the witness' credibility during cross-examination. He must offer controverting evidence as to the value of the property.

---

1. On original submission the judgment in the *Houston* case was reversed by the Corpus Christi Court of Appeals. The court reasoned that the evidence indeed was insufficient to show the value of the property to be within the jurisdictional amount alleged by the State. The court ordered the judgment to be reformed to reflect an acquittal. The State petitioned this Court for discretionary review. We agreed to review the case and subsequently remanded the cause to the Corpus Christi court indicating that the case was wrongly decided and that an acquittal should not have been entered. See *Houston v. State*, 640 S.W.2d 605 (Tex.Cr.App.1982). Our reasons for holding as we did in no way detract from the accuracy of the court's statement quoted above.

In the instant case, the owner clearly testified that the value of the gun was $500.00. Viewing the evidence in the light most favorable to the verdict, as we must, we find the evidence is sufficient to show that the market value of the stolen gun was over the jurisdictional amount of $200.00.

Accordingly, the judgments of the Court of Appeals and the trial court are affirmed.

CLINTON, J., dissents.

TEAGUE, Judge, dissenting.

I first caution the reader of the majority opinion that there is much dicta therein regarding a "non-owner" of personal property testifying to the property's value. I caution the reader because there is no evidence in this record going to any "non-owner" testifying to the value of the second-hand rifle that was stolen from its lawful owner, David Lindsey. The only evidence that goes to the value of the rifle came from Lindsey and no one else. Of course, Lindsey could have testified to the value of the property even though he was not qualified as an expert on what the fair market value of the property was. *Davila v. State,* 547 S.W.2d 606 (Tex.Cr.App.1977). In *Johnson v. State,* 676 S.W.2d 416 (Tex. Cr.App.1984), this Court also held: "We believe that where the owner of property testifies that a short time before the wrongful appropriation occurred he paid a certain sum of money in United States currency for the property, this is sufficient to make a prima facie case of the fair market value of the item unlawfully taken." Unfortunately for the State, Lindsey had not purchased the rifle "a short time" before it was stolen, nor did he ever testify to the fair market value of the rifle at the time and place where it was stolen, nor was he ever qualified to do so.

The issue that is before this Court is whether the State proved all that it had alleged in the indictment in this cause. In pertinent part, the indictment alleges that Howard Dean Sullivan, hereinafter referred to as the appellant, "heretofore on or about September 20, 1982, did unlawfully, knowingly and intentionally appropriate property, other than real property, to-wit: one 30–30 lever action rifle of the value of more than two hundred dollars and less than ten thousand dollars by exercising control over said property without the effective consent of David Lindsey, the owner of the property, and with intent to deprive said owner of said property." The State had the burden to establish, inter alia, that the rifle had a value of more than $200. The jury was so instructed and was also instructed that if it had a reasonable doubt "as to whether the 30–30 lever action rifle in question is of value … you must give the benefit of such doubt to the Defendant and you cannot convict the Defendant of a felony theft, and in such event you will then consider whether the Defendant is guilty of misdemeanor theft," and was further instructed that if it found beyond a reasonable doubt that the appellant had unlawfully appropriated the rifle but it found that the rifle had a value of more than $20 but less than $200 it could find the appellant guilty of misdemeanor theft. The jury found the appellant guilty of the offense of felony theft, "as alleged in … the indictment." The appellant's trial occurred in June, 1983. The Texarkana Court of Appeals affirmed in an unpublished opinion, rejecting the appellant's contention that the evidence was insufficient to establish that the fair market value of the rifle was more than $200. *Sullivan v. State,* No. 6–83–091–CR. In affirming the conviction, the court of appeals stated the following: "David Lindsey testified he purchased his gun, was familiar with its value, and in his opinion its market value at the time of the theft was $500." In light of the record, this factual statement is deceptive.

Lindsey testified that on September 28, 1982 he reported that his residence had been burglarized. Among other things, a *used* 30–30 Winchester rifle, which he had purchased from an unnamed individual in 1979, was taken by the burglar or burglars. The rifle was subsequently returned to him. Because the appellant's trial counsel's objection was sustained, Lindsey was not permitted to give "an idea about what

the value of this gun was" nor, because defense counsel's objection was sustained, was he permitted to testify what he paid for the rifle or what he would have sold the rifle for if a willing purchaser had come forth. Lindsey did testify, however, that he did not "have any idea what the price of the gun would have been about the time it was stolen," but did testify that "I would say [that the market value of the gun] was $500. [To me] it's worth Five Hundred Dollars ($500.00) at least ... That's what I'd take for it." Lindsey also testified that he arrived at the $500 figure because he had never considered selling the rifle. The appellant testified that he had possession of the rifle and another weapon only as security for a loan of $25 that he had made to another individual.

Our Penal Code provides, inter alia, that value of personal property is the fair market value of the property at the time and place of the offense, or, if the fair market value cannot be ascertained, then the cost of replacing the property within a reasonable time after the theft. V.T.C.A., Penal Code, Section 31.08(a)(1). Although given at least two opportunities, when the witness Murphy, who testified that he was a gun trader, and when the appellant himself testified, that he had "asked a few people what [the rifle and the other weapon] were worth," the prosecuting attorney never attempted to obtain testimony from these persons what the fair market value of the rifle was at the time and place of the offense. This is prosecution ineptitude at its worst. There is simply no evidence in the record on appeal that might reflect or indicate what the fair market value of the rifle might have been at the time and place of the offense. Contrary to the majority opinion, Lindsey did not unequivocally testify that "the value of the gun [sic] was $500.00." Neither *Trammell v. State*, 511 S.W.2d 951 (Tex.Cr.App.1974), nor *Coronado v. State*, 508 S.W.2d 373 (Tex.Cr.App. 1974), upon which the majority opinion so heavily relies, will support its holding that "when the owner of the property is testifying as to the value of the property, he or she may testify as to his or her opinion or estimate of the value of the property in general and commonly understood terms."

*Trammell v. State*, supra, is not even in point. The owner of the property, apparently without objection, testified that she purchased the item that had been stolen from her from a business establishment for $89.95. On cross-examination by defense counsel, she testified without objection that "you couldn't buy it anywhere for fifty." Counsel also asked her what she would sell the item for, and she replied without objection: "$50.00." This Court stated the following: "Though she never stated that the cash market value of the television set was $50.00 in clear and precise language, her testimony was obviously meant to convey that idea and must have been so understood by the jury and appellant." (954).

The majority opinion interprets *Coronado v. State*, supra, in the following manner:

> The owner of the property testified that he assessed the value of the tools at approximately one half of the purchase price. We held that this testimony, though in no way purported to be the 'fair market value' of the tools, was sufficient to allow a rational trier of fact to assess the value of the property.

The following, however, is actually what this Court stated and held:

> Appellant next contends that there is insufficient evidence to show the value of the items taken as exceeding $50. The indictment charged the appellant with taking 'one tool box and assorted tools;' the proof showed taking of two toolboxes and assorted tools. Montemayor [the owner] valued the tools at the time of the offense at approximately one-half of the original purchase price, or a total value of over $300.
>
> ... The proof showed each toolbox to be worth $10 and that each contained at least $52.50 worth of wrenches. We therefore hold that the evidence is sufficient to support a conviction for felony theft, as alleged in the indictment.

How *Coronado v. State*, supra, supports the majority opinion's above holding, much like the majority opinion's heretofore un-

heard of legal theory regarding "estimated fair market value", escapes me.

In resolving the issue, based upon past cases of this Court, one must be careful, unlike the majority opinion does in this cause, to distinguish those cases where the proof was uncontested or uncontradicted and where the proof was contested or contradicted. Nevertheless, it is axiomatic that if the value of the property is contested the prosecution must come forth with admissible proof to establish the value of the property beyond a reasonable doubt.

It is also axiomatic that the value of property allegedly unlawfully taken not only determines the jurisdiction of the court but also the punishment that will be assessed in the event of conviction. In proving value of the property, when value of the property becomes an issue, the criterion or test is the reasonable cash or fair market value of the property at the time and place of the offense, but if the property has no cash market value, then replacement value governs. In *Hodges v. State*, 143 Tex.Cr.R. 573, 160 S.W.2d 262 (1942), this Court expressly approved the following meaning of the term "fair market value", which is not statutorily defined: "The term [fair] market value means the fair cash value of the property as between one who desires to purchase and one who desires to sell or the cash price for which the property is commonly sold, or the price fixed by buyer and seller in open market in the usual and ordinary course of lawful trade and competition. The market value is to be fixed at the time and place that the property was taken and delivered, if it was delivered." In this instance, the trial judge gave the jury substantively the same instruction. Thus, in order to obtain fair market value, it is necessary to have an actual or hypothetical willing seller and buyer. 445 *Webster's Ninth New Collegiate Dictionary* (1985). The terms or expressions "market value", "cash market value", "reasonable market value", "fair market value", or "fair cash market value" are substantially synonymous. *Senters v.*

*State*, 163 Tex.Cr.R. 423, 291 S.W.2d 739 (1956). Also see 536 *Black's Law Dictionary* (Fifth Edition, 1979). Of course, market value is not to be determined from what an eager buyer or seller would be willing to pay or sell the property for, or what a seller who obtained it as an unredeemed pledge might be willing to take for it were he anxious or under necessity to sell. Again, "market value" means the amount the property in question would sell for in cash, given a reasonable time for selling it. *Senters v. State*, 163 Tex.Cr.R. 423, 291 S.W.2d 739 (1956).[1]

When the item of personal property is second hand, it is incumbent upon the prosecution to present evidence of what the fair market value of that second hand property might be, and such must come from a qualified witness, absent an objection, and this Court has so held. See *Contreras v. State*, 130 Tex.Cr.R. 100, 92 S.W.2d 1030 (1936). Cf. *Johnson v. State*, supra, for the rule regarding newly purchased property that has been stolen within a short time after it was purchased.

In this instance, there is no testimony from any qualified witness to prove what the fair market value of Lindsey's second hand rifle might have had at the time and place it was unlawfully taken. Thus, the allegata and the probata in this cause are in conflict. The majority opinion erroneously holds to the contrary. I dissent.

---

1. My research to date does not reflect or indicate any such legal phrase as "estimated fair market value"; apparently, the majority opinion therefore believes there is a need among the bench and the bar of this State for a new legal phrase.