**Jim Bob WEATHERFORD, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 11–90–172–CR.**

Court of Appeals of Texas,
Eastland.

Dec. 12, 1991.

Rehearing Denied Jan. 9, 1992.

John H. Hagler, Dallas, for appellant.

Ernie B. Armstrong, Dist. Atty., Snyder, for appellee.

ARNOT, Justice.

The jury convicted appellant of theft of oil field property, a trailer, with a value of $750 or more but less than $20,000, a third

degree felony.[1] The court, after finding the enhancement paragraphs to be true, assessed punishment at 40 years confinement. Appellant raises five points of error, but the unique issue before us is whether the authority to conduct an administrative search pursuant to TEXAS NAT. RES.CODE ANN. § 88.001 et seq. (Vernon 1978 & Supp.1991) can be an adequate substitute for a search warrant. We hold that it cannot but find that the evidence is sufficient to support the conviction. Consequently, we reverse the conviction and remand the cause for a new trial.

In the early morning hours of August 22, 1989, a Mobil Oil Company security guard saw appellant driving his winch truck in Stephens County loaded with a roll of REDA wire. The guard recognized appellant, turned his truck around, and began to follow him. The security guard contacted his employer who checked Mobil's equipment yard and found a roll of REDA wire missing. The fence had been cut, and a yellow T-post had been run over near the spot where the wire had been stored. The security guard then contacted the sheriff's office. The sheriff's deputies stopped appellant's vehicle as he was on his way to an oil and gas lease. The security guard and his employer arrived at the scene and positively identified the wire as that which was stolen from their equipment yard. The undercarriage of appellant's truck had a yellow mark on it. Appellant was then arrested.

Several hours after the arrest, after waiting for daylight, a group of law enforcement officers converged on appellant's oil and gas lease in Stephens County to search for more stolen property. A sign posted on the gate to the lease indicated that it belonged to appellant and his brother's company, Weatherford Brothers Properties, Inc. Appellant's conviction in this case is for theft of a Mesa Pipeline Company trailer which was found on the oil and gas lease. The trailer was stolen from Mesa Pipeline's equipment storage yard in Scurry County sometime between April 15

and May 3, 1989. Later that same day, August 22, 1989, a search was also conducted at appellant's residence in Breckenridge, Stephens County, which also served as his company's office. During the search, the officers recovered a license plate, which was later ascertained to belong on the stolen trailer found on the lease.

In his first and fifth points of error, appellant complains that the evidence is insufficient to link him to the stolen trailer and to prove that the trailer's value was greater than $750. We disagree.

In reviewing the sufficiency of the evidence, the criteria is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Carlsen v. State*, 654 S.W.2d 444 (Tex.Cr.App.1983). All of the evidence in both direct and circumstantial evidence cases must be reviewed in the light most favorable to the verdict. *Marroquin v. State*, 746 S.W.2d 747, 750 (Tex.Cr.App. 1988); *Houston v. State*, 663 S.W.2d 455, 456 (Tex.Cr.App.1984). This inquiry does not permit the reviewing court to ask itself whether it believes that the evidence establishes guilt but whether, after reviewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Gene Rankin, the district supervisor for Mesa Pipeline who owned the stolen trailer, testified that the trailer was removed from Mesa's equipment yard in Scurry County without his permission. The theft was reported to the police. Rankin identified the trailer recovered from appellant's Stephens County oil and gas lease by the serial number. He testified that the license plate that was on the trailer when it was stolen was the same plate as recovered from appellant's Breckenridge office. The P4 form[2] identified the lease

---

1. TEX. PENAL CODE ANN. § 31.03 (Vernon 1989 & Supp.1991).

2. A P4 form, required to be filed with the Railroad Commission, describes the lease, its location, and the name and address of the operator.

where the trailer was stored as belonging to appellant. When he was arrested with the stolen REDA cable, appellant was going to the lease where the stolen trailer was recovered. Other witnesses stated that they had seen appellant on the lease.

Appellant also argues that the State failed to prove that the value of the trailer exceeded $750. Rankin testified that the trailer would cost $2,000 new but that, in his opinion, the used trailer had a value of $1,200. Alton Forbus, a mechanic for Mesa Pipeline who was familiar with the trailer, also testified that the value of the trailer was in excess of $750. The evidence, when viewed in the light most favorable to the verdict, is sufficient to support the conviction. *Sullivan v. State*, 701 S.W.2d 905, 908 (Tex.Cr.App.1986). Appellant's first and fifth points of error are overruled.

 In his second point of error, appellant complains that the trial court erred in allowing the State to offer evidence of an extraneous offense, the theft of the REDA cable. Appellant contends that it was error to admit the testimony because the offense was unrelated and the admission of any testimony concerning the stolen REDA cable had a highly prejudicial effect on the jury. We disagree. Extraneous offenses are admissible at trial if they are offered for one of the limited purposes permitted by the Texas Rules of Criminal Evidence.[3] The trial court ruled that the testimony was admissible and gave a limiting instruction to the jury to only consider the evidence to show motive and intent. Appellant's second point of error is overruled.

Agent Michael Knight, a special theft investigator for the Railroad Commission of Texas, accompanied other law enforcement officers in the search of the oil and gas lease and the business office of appellant. The search was conducted pursuant to a search warrant. The prosecutor advised the trial court that the State would not rely on the search warrant it had secured. The record does not contain the search warrant or reveal why the State believed it to be faulty. Instead, the State relied upon Chapter 88 of the Natural Resources Code as authority for a warrantless administrative search.

Section 88.091 provides that the governmental agency shall have access at all times to "(1) the oil property of all persons for inspection and examination; and (2) the records of all these persons for inspection, examination, and audit." Section 88.001 defines "governmental agency" as the Railroad Commission and "oil property" as:

[A] well producing oil, gas, or oil and gas, and any group of such contiguous wells of any number owned, operated, or controlled as a producing unit by the same person in the same locality, and any leasehold estate to the extent that it is owned, operated, and controlled by the same person.

Section 88.092(1) & (4) provides that:

No person may:

(1) refuse to permit the governmental agency, or an agent, servant, representative, or employee of the governmental agency, to have access to an oil property for inspection and examination;

(4) refuse to permit the governmental agency, or an agent, servant, representative, or an employee of the governmental agency, to have access, for inspection, examination, and audit, to the books, documents, and records pertaining to, used in connection with, or required to be used in connection with an oil property.

The Supreme Court recently reaffirmed the validity of warrantless administrative searches and reiterated the requirement that such searches be reasonable. *New York v. Burger*, 482 U.S. 691, 107 S.Ct.

---

3. TEX.R.CRIM.EVID. 404(b) provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided, upon timely request by the accused, reasonable notice is given in advance of trial of intent to introduce in the State's case in chief such evidence other than that arising in the same transaction.

2636, 96 L.Ed.2d 601 (1987). In *Burger*, a case involving an administrative search of a junkyard, the Court acknowledged that commercial premises are covered by the fourth amendment as well as private homes, but the expectation of privacy in the former is less than that applicable to the latter. If the business is considered closely or pervasively regulated such as firearm or liquor establishments, then the expectation of privacy is further attenuated. See *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972); and *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970).

■ Given that there is some expectation of privacy, however, a warrantless administrative search will be reasonable only if three criteria are met:

1. There must be a "substantial" government interest that gives rise to the regulatory scheme under which the search is made.

2. The warrantless search must be necessary to further the regulatory scheme.

3. The certainty and regularity of the application of the regulatory scheme must provide an adequate substitute for a warrant.

The *Burger* Court held that the junkyard search was acceptable. The Court also noted that it made no difference that the administrative search was conducted by police officers rather than administrative agents. In *Crosby v. State*, 750 S.W.2d 768 (Tex.Cr.App.1987), a case involving an administrative search of a nightclub by police officers under the authority of TEX. ALCO.BEV.CODE ANN. § 101.04 (Vernon 1978), the Court held that State warrantless administrative searches will be judged according to the same guidelines applicable under federal analysis.

In his third and fourth points of error, appellant claims that the search and sei-

zure from his oil property and his business office were invalid because they exceeded the Railroad Commission Agent's authority under Section 88.091. We agree.

■ In his fourth point of error, appellant complains of the search of his business office and of the seizure of a license plate. The State argues that it was entitled to enter the premises under Section 88.092(4) because it was searching for a bill of sale for the REDA cable, a business record. Section 88.092(4) clearly demands access to the records of a person engaging in the oil and gas business for inspection and audit. However, it does not state that that access has to be at one's business or home; reasonable access to the records could be provided in a number of places.

At the time of the administrative search, appellant was incarcerated. Appellant's office was located in the home that he shared with his brother. When Agent Knight and law enforcement officers entered the house through an unlocked door, no one was home. Seeing five license plates on the floor in the corner of the room used as an office, the officers seized the plates, removed them from the premises, and ran a computer identification check. The check revealed that one plate found in the office had been registered to the stolen Mesa trailer. Agent Knight's testimony as to his understanding of his authority is revealing:

A: The address that's on the P5,[4] sir, that's listed as a business address ... where during normal working hours ... we can go to that address and contact these people.

Q: Yes, sir. Did you have permission to go on the premises at 314 North Shelton when you went in there?

A: *As long as its listed as a business address, I don't have to have permission. I could go.* (Emphasis added)

We are of the opinion that the search of appellant's home and office and the seizure of the license plate under Section 88.092(4)

---

**4.** A P5 form is an organizational report required to be filed by the Railroad Commission. The report lists the name of the operator and his address. Although the lease sign identified Weatherford Properties as a corporation, the P5 form indicated that Weatherford Properties was a partnership, that Jerry G. Weatherford and appellant were partners, and that their address was 314 N. Shelton, Breckenridge.

exceeded the Railroad Commission Agent's statutory authority in that the search and resulting seizure were not conducted within the procedural safeguards guaranteed appellant under the Fourth Amendment to the U.S. Constitution[5] or under TEX. CONST. art. I, § 9.[6] Appellant's fourth point of error is sustained.

■ In his third point of error, appellant complains of the search of the oil and gas lease which led to the discovery of the stolen trailer along with other stolen property. We first note that there is a distinction to be made between the search of appellant's home and office under Section 88.092(4) and the search of the oil property under Section 88.092(1). As noted in *Burger*, the expectation of privacy of a commercial property is less than that of one's residence or office. In further contrast to Section 88.092(4), the right of access to records, Section 88.092(1) requires access to the oil property.

■ In this case, the State argues that its administrative search of the oil property was valid, that no warrant was necessary because the oil and gas industry is a stringently regulated industry, and that persons engaging in the business are deemed to have consented to administrative inspections as a means of insuring protection of the public and the industry. However, the need for the inspection has to be weighed against the invasion effected by the search. The State makes a valid comparison of the search of appellant's oil property under Section 88.092(1) with those administrative searches conducted in *Burger* and *Crosby*. However, there is a distinction to be made in this case with those situations where stolen property was discovered by an agent while conducting a lawful administrative search. These are not the facts in this case. In this case, the agent conducted the administrative search to search for stolen property. Apparently, appellant was using the oil and gas lease as an equipment yard for the storage of equipment not directly related to the production of the well. It is apparent from the record that Agent Knight was not seeking to investigate the lease for any violation of the Natural Resources Code;[7] rather, he entered the prop-

---

5. The United States Constitution, Amendment IV reads:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

6. The Texas Constitution, Article I, § 9 reads:

The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation.

7. The purpose of an administrative search is described in Sections 88.093 and 88.011. Section 88.093 provides that no person may enclose his property in such a manner that would prevent inspection and examination from revealing the true facts with respect to: (1) the amount of oil and gas being produced; (2) the manner in which the oil property is being operated; and, (3) the manner and method by which the production from the oil property is produced, stored, or delivered from the possession or control of that person.

Section 88.011 provides:

(a) The governmental agency may promulgate and adopt rules:

(1) to provide for the method of measuring oil and gas produced from any well in this state and to provide for the type of measuring devices to be used in obtaining the measurement;

(2) for the inspection of all oil properties to ascertain that the prescribed measuring devices are installed, are in accurate working condition, and are being accurately used;

(3) to provide that no oil or gas is being permitted to leave the possession of the producer without first being accurately measured and an accurate record of production made and preserved;

(4) to provide that no oil is being produced from a well producing both oil and gas without burning a flare or flares if the installation and use of a flare or flares is required by the terms of this chapter;

(5) for the keeping of complete and accurate records correctly reflecting the amount of oil or gas or both produced from each oil property each calendar day and the disposition and method of disposition of all the oil and gas produced, and for the monthly filing with the governmental agency of monthly reports accurately reflecting the true facts with respect to all such matters; and

(6) for the inspection and examination by the governmental agency, or its agents, ser-

erty to locate, identify, and catalog stolen property. Furthermore, *Burger* and *Crosby* require that, in order for a regulatory statute to be an adequate substitute for a search warrant, the statute must limit the officers' discretion according to time, place, and scope. Section 88.092(1)[8] clearly does not satisfy this requirement. We are of the opinion that the State, in its search of the oil and gas lease conducted to search for stolen property, exceeded its authority under Chapter 88. Appellant's third point of error is sustained.

The judgment of the trial court is reversed, and the cause is remanded for a new trial.

vants, and employees, of all oil properties and the records provided for in this chapter.

8. The inspection statute, Section 88.092(1) is strikingly similar to TEX. PARKS & WILD. CODE ANN. § 47.037 (1975) examined by the Court in *Baggett v. State,* 722 S.W.2d 700 (Tex. Cr.App.1987), and *Nesloney v. State,* 711 S.W.2d 636 (Tex.Cr.App.1986). At that time, Section 47.037 provided:

No person may refuse to allow an employee of the department to inspect aquatic products handled by or in the possession of any commercial fisherman, wholesale fish dealer; or retail fish dealer at any time or in any place. The Court in *Baggett* and *Nesloney* found that Section 47.037 was unconstitutional on its face. Appellant does not contend that Section 88.-092(1) is unconstitutional in this case.