

# Fourth Court of Appeals
## San Antonio, Texas

## DISSENTING OPINION

No. 04-14-00818-CR

Mark McCourt **LIEBER**, Jr.,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 198th Judicial District Court, Kerr County, Texas
Trial Court No. B14-155
Honorable M. Rex Emerson, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice
Dissenting Opinion by:  Rebeca C. Martinez, Justice

Sitting:        Rebeca C. Martinez, Justice
                Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  December 30, 2015

I dissent because, in my opinion, the scant record before us contains no evidence, or merely a "modicum" of evidence, of the value of the stolen diamond engagement ring on the date of the theft. *See Garcia v. State*, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012); *see also* TEX. PENAL CODE ANN. § 31.03 (West Supp. 2015) (value is essential element of theft offense).  While I agree that an owner of stolen property is competent to testify to prove value, I disagree that the owner's testimony solicited by the State in this case is sufficient to support Lieber's conviction.

Lieber was indicted for theft of personal property valued at $1,500 or more but less than $20,000 from an elderly individual.  TEX. PENAL CODE ANN. § 31.03(e)(4)(A), (f)(3)(A).  The jury

was instructed that it could not convict Lieber of that degree of theft ($1,500-$20,000) if it had a reasonable doubt "that the personal property was not of the value of $1,500.00 or more in the condition it was in at the time it is alleged to have been stolen." In that event, the jury was instructed to consider whether Lieber was guilty of the lesser included offense of theft of property valued at $500 or more but less than $1,500. On appeal, Lieber does not challenge the sufficiency of the evidence showing the aggregate value of the other items of stolen jewelry was $1,050, but only challenges the sufficiency of the evidence to prove the value of the diamond engagement ring at the time of the theft, i.e., that it was at least $450.

Value for purposes of theft is defined in relevant part as "the fair market value of the property . . . at the time and place of the offense." TEX. PENAL CODE ANN. § 31.08(a)(1) (West Supp. 2015); *see Keeton v. State*, 803 S.W.2d 304, 305 (Tex. Crim. App. 1991) (defining fair market value as "the amount the property would sell for in cash, giving a *reasonable time* for selling it"); *Valdez v. State*, 116 S.W.2d 94, 98 (Tex. App.—Houston [14th Dist.] 2002, pet ref'd). There is no exclusive method of proving fair market value in a theft case. *Keeton*, 803 S.W.2d at 305. The Court of Criminal Appeals has recognized several acceptable methods of proving value, including through evidence of the purchase price paid for the stolen item, the owner's opinion testimony as to the item's value, and an "expert" non-owner's opinion testimony as to the item's value. *Id.*

Here, the State's evidence of the value of the engagement ring consisted of the testimony of Jason Smith of Fitch Estate Sales who purchased the gold, plus a copy of a photograph showing the gold ring setting without the diamond, and the testimony of Mrs. Valentino, the owner. Smith testified that he never saw the intact diamond engagement ring because Lieber brought in only the gold ring setting without the diamond. Smith stated he purchased the engagement ring setting for its 4.2 gram weight of 14k gold, paying $73.41 which was 75% of the gold weight value on that

day.  Smith identified State's Exhibit #1 as a photograph showing the empty diamond ring setting, along with an empty pearl ring setting, placed on top of the receipt from Fitch Estate Sales for $73.41 and $28.00 worth of gold, respectively.  Smith testified that he did not see the stones allegedly contained in the two rings, and wrote down their descriptions as a "diamond ring" and a "pearl ring" based on what Lieber told him.  Mrs. Valentino identified the two ring settings shown in the photograph at trial as those of her filigree pearl ring and her diamond engagement ring without the stones.  Smith further testified that what he paid for each ring was seventy-five percent of "what we buy the gold value for" and specifically denied that it was an appraisal of the ring.  It is undisputed that Smith has no personal knowledge of the value of the ring with or without a diamond and, therefore, his testimony is insufficient evidence of the fair market value of the property allegedly stolen.  *See Sullivan v. State*, 701 S.W.2d 905, 908-09 (Tex. Crim. App. 1986).  Thus, the evidence presented by Smith and the photograph only proves the $73.41 "gold value" of the gold engagement ring setting without the diamond.

The record contains no photograph or other evidence of the engagement ring in its intact state with the diamond stone inside the setting, nor any evidence of the value of a ¾ carat diamond.  Mrs. Valentino testified that her engagement ring was forty years old.  She admitted that the ring had never been appraised and that she never made any comparison of her ring to other "bands" of a similar nature.  Mrs. Valentino described the ring as a white gold setting with a ¾ carat diamond stone, part of a matching set with a wedding band, and intact worth $5,000.  Although it is well-established that the owner of stolen property is competent to testify as to the value of her own property, here there is no factual basis underlying her opinion testimony sufficient to prove the value of the diamond engagement ring.  Nor is there support for the majority's conclusion that an owner's assessment of value based purely on her subjective belief is alone sufficient to satisfy the State's burden to prove value in a theft case.  When the Court of Criminal Appeals has determined

that the stolen property's owner has sufficiently established fair market value by his or her own testimony, such testimony included an assessment of value based on market value, i.e., its purchase price, what a buyer would pay for it, or what the owner would be willing to sell it for. *See Turner v. State*, 486 S.W.2d 797, 799 (Tex. Crim. App. 1972) (owner testified property in question was worth a given amount at market at the time it was stolen and that they "would not take less than" a given amount for the property); *see also Sullivan*, 701 S.W.2d at 907 (gun owner who purchased stolen gun testified when asked about gun's market value, "It's worth $500 at least.")

The State agrees that it is their burden to prove the stolen property's value through evidence of either (1) its fair market value at the time and place of the offense, or (2) the cost of replacement if fair market value is unascertainable. TEX. PENAL CODE ANN. 31.08(a). Here, the State sought to prove theft of property over $1,500 by offering evidence of its (1) fair market value, and not its (2) cost of replacement. "[T]he owner's best knowledge of the value of his property" is offered "in terms of *purchase price* or the cost to him of replacing the stolen property." *Smiles v. State*, 298 S.W.3d 716, 719 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (emphasis added). The record contains no other evidence, testimony or otherwise upon which Mrs. Valentino bases her personal assessment of value for the diamond ring intact.

I agree that an owner of stolen property is competent to testify as to the value of her own property, and that her testimony is presumed to offer an estimation of fair market value. *See Keeton*, 803 S.W.2d at 305; *Sullivan*, 701 S.W.2d at 908-09. When Mrs. Valentino as the property owner testifies that she believes the ring is worth $5,000, we presume only that she is qualified to offer a fair estimation of fair market value even though she is not an expert. There still must be some basis supporting the owner's opinion. "[W]hen the owner of the property is testifying as to the value of the property, he or she may testify as to his or her opinion or estimate of the value of the property in general and commonly understood terms." *Sullivan*, 701 S.W.2d at 909. Here, the

State failed to solicit from Mrs. Valentino the basis for her opinion assessing value at $5,000, e.g., the price she might find a similar ring or what amount she might fetch for it if sold intact. We must consider that an owner's testimony is not rebuttable by simply impeaching her credibility through cross-examination. In other words, the defense cannot refute an owner's *credibility* to testify what she believes is the value of the stolen item. *Id.* at 908 (owner is competent to testify as to value though not qualified as an expert on the value of the property). However, what is rebuttable by controverting evidence is the basis supporting her opinion, i.e., its purchase price, what the diamond ring would be bought for, or what it could be sold for at the time of its taking. Although Lieber offered controverting expert evidence disputing the size of the diamond, it was still the State's burden to prove the value of the diamond engagement ring intact. That the jury could believe the diamond ring was intact when stolen is inapposite. On this record, the State did not prove the *value* of the diamond ring.

The danger in this case is in allowing the State in every theft case to meet its burden to prove value by simply asking the owner of the stolen property what they believe the item was worth to them, without any consideration of what it may be worth to anyone else, regardless of when it was stolen. The law does not presume that an owner's personal assessment of value alone is legally sufficient evidence of value. If it were so contemplated, the State's burden of proof would be satisfied in every theft case simply by an owner's testimony that her stolen property was worth any value assigned by her alone, negating any opportunity by the defense to refute her testimony or to seek review of her assignment of value. Again, I agree that Mrs. Valentino is competent to testify, but disagree that her testimony alone as solicited in this case is sufficient to prove value between $1,500 and $20,000 to support a state jail felony conviction.

Furthermore, I also disagree that the insurance claim evidence is probative of the fair market value of the diamond ring. Here, the State made no effort to prove the value based on cost

of replacement, and made no initial showing that the fair market value of the stolen items was unascertainable. TEX. PENAL CODE ANN. § 31.08(a)(2). Notwithstanding its immateriality in this case, the controverting evidence offered by Lieber to refute the value of the ring in question is also insufficient to prove value. First, Mrs. Valentino testified she received $3,800 for the total claim covering all the stolen jewelry, not just for the engagement ring. Second, Mrs. Valentino testified that the insurance company did not appraise the engagement ring before the theft, and that after the theft, she provided only a verbal description of the intact ring, i.e., "three-quarter karat diamond, white gold." The insurance company never actually viewed or examined the intact diamond ring. Mrs. Valentino did not have a separate rider on her insurance policy for the ring. Third, the only paperwork in the record pertaining to the insurance claim for the stolen jewelry is Defendant's Exhibit #2, which is a single document from Allied Property & Casualty Insurance Company, denoted as "page 3," that lists four items of jewelry and assigns a numerical value to each. Lieber offered the exhibit as controverting evidence. With respect to the engagement ring, the document identifies it as a "14k white gold Engagement ring setting with approx. 2.1 grams of gold weight;" it is noteworthy that Smith testified the engagement ring's gold setting weighed 4.2 grams. The insurance document then gives a numerical value of "3,165.00" under the columns for "Unit Cost," "RCV," and "ACV" without defining those terms. It further states, "Replacement Services price to replace 14k White gold Engagement ring setting with approx. 2.1 grams of gold weight. Containing (1) .75 pt Round Brilliant cut diamond. With H color and S12 clarity. Also with a GIA lab grading. Including Labor to assemble ring." The document then assesses numerical values to the other three jewelry items for a grand total of "3,999.00," but this figure does not match the total claim made by the owner in the amount of $4,300 (before the deductible) or the $3,800 (after the deductible) that Mrs. Valentino states she received from the insurance company. Further, the numerical values are not designated as dollar amounts, and the terms "Unit Cost,

"RCV" and "ACV" are not defined. Without more description in the document or supporting testimony showing the factual basis for the insurance company's valuation of the engagement ring, the single page from the purported claim does not amount to more than a scintilla of probative evidence of the intact ring's value.

Finally, the two cases relied on by the majority which involve evidence of insurance claim payments offered to prove fair market value are both inapposite and factually distinguishable. Again, the majority does not agree with Lieber's contention "that Valentino's opinion of the diamond ring's value was based on the insurance claim or 'trade-in value.'" The majority reiterates that Valentino's assessed value is based on her personal opinion alone, pointing out that $5,000 is $2,000 greater than the insurance company's assessed value. Both *Jimenez* and *Davis* involved stolen vehicles, which are commonly understood to be insured. Unlike here, the witness in each case testified that his opinion of fair market value of the vehicle was *based* on the amount recovered from an insurance claim. *See Davis v. State*, No. 14-04-00610-CR, 2006 WL 177581, at *1 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (mem. op., not designated for publication) (general manager bases opinion of vehicle on amount recovered from dealership's insurance recovery); *see also Jimenez v. State*, 67 S.W.3d 493, 505-06 (Tex. App.—Corpus Christi 2002, pet. ref'd) (owner based value of pickup on his recovery from the insurance company after truck totaled and testified in commonly understood terms). Contradictory evidence presented to the jury as to value, e.g., sales price versus insurance recovery, allowed the jury to choose between two conflicting market values in determining fair market value. No case relied on by the majority stands for the proposition that the property owner's personal assessment alone is legally sufficient to prove value.

For these reasons, I disagree with the majority's conclusion that the evidence is legally sufficient to prove the fair market value of the diamond engagement ring beyond a reasonable doubt.

Rebeca C. Martinez, Justice

PUBLISH