

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00274-CR

---

**KENT CARL SCHWARTZ, APPELLANT**

**V.**

**THE STATE OF TEXAS, APPELLEE**

---

On Appeal from the 218th District Court
Atascosa County, Texas
Trial Court No. 20-11-0300-CRA, Honorable Russell Wilson, Presiding

---

August 15, 2024

## MEMORANDUM OPINION[1]

**Before QUINN, C.J., and DOSS and YARBROUGH, JJ.**

Appellant Kent Carl Schwartz appeals the trial court's judgment by which he was convicted of theft of property the value of which is more than $30,000 but less than $150,000. He raises five issues on appeal. We affirm.

---

[1] Because this matter was transferred from the Fourth Court of Appeals, we apply its precedent when it conflicts with that of the Seventh Court of Appeals. *See* TEX. R. APP. P. 41.3.

*Background*

Appellant and Daric Doguet were neighboring farmers in Atascosa County, Texas. They came to an agreement to share the work and profits on a 1,000-acre parcel (Parcel A). Pursuant to this agreement, Doguet would provide the seed for a special variety of grass to grow on the land, and appellant would plant, maintain, and harvest it. Then, Doguet and his company, OSTF, would sell it. Profits would then be split, 70% to appellant and 30% to Doguet.

Appellant met with some financial hardship about this time. In light of appellant's financial situation, he lacked enough money to harvest the grass. That resulted in Doguet agreeing to harvest it and share the profits 50/50.

Because appellant also owed $100,000 on Parcel A and foreclosure was looming, Doguet sought to protect his investment. His effort to do so included payment of $41,000 in advance as part of appellant's share of the profits. The two also arranged for the lease of another tract of land. This accord involved 50 acres (Parcel B) also owned by appellant. And, the two entered into a traditional landlord/tenant lease with respect to it. Under it, Doguet not only agreed to lease the land for three years and pay for the electricity used to pump irrigation water but also made an advance payment of $47,000. All but $2,000 of that sum went to rent; the remaining $2,000 was to cover electricity. Doguet planned to plant, harvest, and sell a variety of Zoysia grass on his own. As part of the accord and with appellant's consent, Doguet utilized appellant's harvester. No profit-sharing arrangement was in place as to Parcel B.

The relationship between the two soured. Doguet accused appellant of violating the non-compete clause in their Parcel A agreement by selling grass on the side. After

2

Doguet threatened to terminate the agreement, the two reached a settlement. It solely encompassed Parcel A. Under it, Doguet paid appellant approximately $107,000 to end that particular business relationship. However, the landlord/tenant relationship concerning Parcel B remained in place.

Eventually, appellant sought $50,000 from Doguet for the latter's use of the former's harvester. Doguet refused to pay. He did, though, repair the implement and cease its use. Appellant remained dissatisfied and concocted a scheme whereby he would harvest grass grown on Parcel B and transplant it elsewhere. He sought from Doguet's employee information about when Doguet would be out of town. Upon obtaining it and waiting until then, appellant dug up about four acres of Zoysia grass sprigs and replanted them on Parcel A. Doguet reported, and would later testify, that the four acres of grass sprigs would have been sold for $50,000.

Subsequently, the State charged appellant with theft of property in an amount of at least $30,000 but less than $150,000. A jury found him guilty of same, and this appeal ensued.

### Issue 1: Sufficiency of the Evidence

The first issue concerns the legal sufficiency of the evidence. Appellant seems to challenge the quantum of evidence establishing two or, maybe, three elements of theft.[2] Those elements seem to encompass intent, valuation, and identity of the property taken. We overrule the issue.

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the

---

[2] We say two or maybe three because his argument is a bit less than clear.

3

crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

Next, the sole count of the indictment issued by the grand jury stated that appellant "did then and there: unlawfully appropriate, by acquiring or otherwise exercising control over, property, to wit: Palisades Zoysia Turgrass, of the value of $30,000 or more but less than $150,000, from Deric [sic] Doguet, the owner . . . without the effective consent of the owner, and with the intent to deprive the owner of the property." This allegation generally tracks the elements of theft. Per the Texas Penal Code, one commits that crime if he unlawfully appropriates property with intent to deprive the owner of the property. *See* TEX. PENAL CODE ANN. § 31.03(a). Furthermore, when the value of the property appropriated is more than $30,000 but less than $150,000, the offense is a third-degree felony. *See id.* § 31.03(e)(5).

As for intent, it involves a question of fact. *State v. Fuller*, 480 S.W.3d 812, 823 (Tex. App.—Texarkana 2015, no pet.). Proving it typically occurs through use of circumstantial evidence, which evidence includes the accused's acts, words, and conduct. *See id.* That said, we turn to the record before us.

No doubt, it contains evidence of appellant's removing sprigs of Zoysia grass from four acres of land leased to Doguet. That he did so after inquiring from a third party when Doguet would be gone from the property, waited to act until Doguet was gone from the

4

property, and transplanted them onto a parcel of land he owned outside Parcel B constituted some evidence upon which a rational jury could conclude, beyond reasonable doubt, that he intended to deprive Doguet of the property.

Yet, appellant also contends that the State was obligated to prove appropriation resulted from false pretext or fraud because a contract was involved. Supporting his argument, he cites us to *Taylor v. State*, 450 S.W.3d 528 (Tex. Crim. App. 2014), but fails to establish its applicability. The *Taylor* court did say that a "'claim of theft made in connection with a contract . . . requires proof of more than an intent to deprive the owner of property and subsequent appropriation of the property. In that circumstance, the State must prove that the appropriation was a result of a false pretext, or fraud.'" *Id*. at 536, (quoting *Wirth v. State*, 361 S.W.3d 694 (Tex. Crim. App. 2012)). The circumstances encompassed there consisted of the eventual defendant inducing the victim to part with money or consideration as part of performing a contract. *See id.* at 531. In that situation, conviction required proof that the defendant intended to do more than appropriate or deprive the victim of money. As the court further explained, "[o]nly when, at the time that money is exchanged pursuant to the contract, the accused either intends not to, or at least knows he will not, perform his part of the bargain may he be held criminally liable for theft." *Id.* at 536. So too may the defendant "be found guilty of theft if, at some point after the formation of the contract, he formulates the requisite intent to deprive and appropriates *additional* property by deception; that is, he induces his customer to make further payment on the contract while no longer intending to perform, or at least knows he will not, perform his part of the bargain may he be held criminally liable for theft." *Id.* at 537 (citing *Ehrhardt v. State*, 334 S.W.3d 849, 855–56 (Tex. App.—Texarkana 2011,

5

pet. ref'd)). Here, our situation differs. Appellant did not utilize a contractual arrangement to induce Doguet to part with money or consideration in exchange for some item. Rather, appellant simply waited until Doguet was gone to deprive him of grass having a worth of $50,000. Later he would argue he did so to cover payment of a purported electric bill due from Doguet of much lesser amount. And, most importantly, appellant cites us to no authority applying *Taylor* to a setting akin to that at bar wherein the accused did not induce the victim to part with money as part of a contract.

Yet, assuming that *Taylor* were applicable, the jury had before it evidence of false pretext by appellant. It appeared in the form of appellant's claiming Doguet owed him a debt and defaulted in its payment; his asking Doguet's employee when Doguet would be away from Parcel B; his waiting until Doguet was gone to remove the grass sprigs; his posting notice of the purported default on a locked gate to Parcel B ***after*** removing the grass in question; his failure to provide Doguet an invoice exemplifying the purported debt until ***after*** taking the property; his transplanting the sprigs on property he controlled rather than selling them to satisfy the supposed debt; his eventual and inconsistent position that the sprigs lacked value while attempting to escape criminal responsibility for taking them; and his removal of approximately $50,000 worth of grass to cover an outstanding electrical bill of less than $4,000 payable under the lease and secured by the security interest granted therein.[3] As said in *Taylor*, one may be found guilty of theft if "at some point after the formation of the contract, he formulates the requisite intent to deprive and appropriates *additional* property by deception." *Taylor*, 450 S.W.3d at 537. To that we

---

[3] Indeed, the duplicitous or deceitful nature of his conduct and mindset is exemplified by his denying that the portion of the crop taken had any value but, nonetheless, viewing it as worthy of replanting and growing it on his own property.

add words from *Wirth*. In assessing the presence of the requisite mens rea for theft, "we should look at 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Wirth*, 361 S.W.3d at 697. The events occurring before, during, and after removing the grass sprigs permit a rational person to reasonably infer appellant engaged in false pretext when deciding to take Doguet's grass without the latter's consent.

Appellant also challenges the State's evidence that the value of the property appropriated was more than $30,000. His attack, though, is ill-fated.

The Texas Penal Code defines that value of the property as either the fair market value of the property at the time and place of the offense or, if the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the theft. *See* TEX. PENAL CODE ANN. § 31.08(a). Fair market value is the amount that the property would sell for in cash, given a reasonable time for selling it. *Simmons v. State*, 109 S.W.3d 469, 473 (Tex. Crim. App. 2003); *Curtis v. State*, 385 S.W.3d 636, 638–39 (Tex. App.—Amarillo, no pet.). And, when the owner of the property testifies as to the value of the property, such testimony will constitute sufficient evidence for the trier of fact to rely on in deciding value, if the factfinder finds the testimony credible. *See Sullivan v. State*, 701 S.W.2d 905, 909 (Tex. Crim. App. 1986) (en banc).

Here, appellant expressly conceded that "there is some evidence that supports the verdict." Moreover, Doguet testified that the value of the property was $50,066.88, which represented the value of the 4.1 acres of grass sprigs had Doguet sold it in the regular course of business. As Doguet noted, "that's what I would have done with it." Much was

made at trial concerning the distinction between pallets and sprigs. However, the record also contained evidence that the sprigs taken were as valuable as pallet grass, and in certain situations, even more so. This coupled with appellant's own concession as to "some evidence" supporting the verdict leads us to conclude that the State proved the value of the grass beyond reasonable doubt.

### Issue 2: Factual Insufficiency

Appellant next argues that the evidence was factually insufficient to support the jury's verdict. Our Court of Criminal Appeals nullified the applicability of that standard of review years ago. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). So, we overrule issue two.

### Issue 3: Exclusion of Evidence

Appellant next contends that the trial court abused its discretion by denying him the opportunity to examine Doguet, in front of the jury, about why he allegedly failed to produce purportedly subpoenaed documents. Those documents allegedly consisted of records illustrating the expenses Doguet would have incurred in growing, harvesting, and selling the grass removed from Parcel B. And, in being barred from examining Doguet about complying with the subpoena, appellant supposedly was denied his constitutional rights to compulsory process and confront witnesses. We overrule the issue for several reasons.

First, appellant said nothing about those particular constitutional rights when attempting to explain why he should be allowed to conduct his examination before the jury. Thus, those grounds were not preserved for review. *See* TEX. R. APP. P. 33.1.

Second, whether a trial court erred in denying the admission of evidence or restricting examination is reviewed for abused discretion. *See Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). Establishing that discretion was abused requires explanation as to why the ground relied upon by the court, and every other potential ground supporting the decision, was baseless. *Riley v. State*, No. 06-15-00104-CR, 2016 Tex. App. LEXIS 5458, at *17 (Tex. App.—Texarkana May 25, 2016, pet. ref'd) (stating that where the trial court's adverse ruling can be sustained on more than one basis, an appellant must attack each basis). Here, the trial court barred the examination because it deemed the matter to be one "that should have been done, that's going to happen before trial." In other words, it denied appellant's request because it concerned a pretrial matter that should have been raised and resolved before trial began. Yet, appellant did not explain, through substantive analysis and citation to legal authority, why the reason given by the trial court was incorrect. He failed to explain why the debate was not truly one pertaining to pretrial discovery that should have occurred pretrial. Furthermore, it is not our responsibility to supply the missing argument. *See id.* Thus, he failed to carry his burden to show error.

Third, the trial court granted appellant the opportunity to make an offer of proof supporting his contention about non-compliance with the subpoena. During same, Doguet testified that he had no documents of the ilk demanded by appellant. Thus, we cannot see how appellant was harmed by a decision precluding him from cross-examining Doguet about the failure to deliver non-existent documents.

Fourth, appellant's effort to interject a purported defense into his current effort at illustrating why the trial court should have allowed him to examine Doguet about potential

9

documents Doguet may not have produced is also unavailing. That is, he suggests that the trial court erred because he "can raise the defense that the value of the property is inaccurate because he was entitled to an offset defense." Yet, that was not a ground uttered to the trial court. Indeed, he sought leave to ask about non-produced documents to bolster his contention that Doguet owed a debt payment for which could be supplied through confiscating Doguet's grass. Never did he contemporaneously posit that he sought to prove a defense of offset for purposes of reducing the value of the property taken. This default is of import because arguments raised on appeal must comport with those uttered at trial. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). Having said nothing about the defense of offset when seeking to examine Doguet about non-produced documents, appellant waived the ground on appeal.

### Issue 4: Charge Error

By his fourth issue appellant argues that the trial court erred when it refused to include in its charge an instruction on valuation when the stolen property's value cannot be ascertained. We overrule the issue.

The Texas Penal Code provides that "[i]f property or service has value that cannot be reasonably ascertained by the criteria set forth in Subsections (a) and (b), the property or service is deemed to have a value of $750 or more but less than $2,500." TEX. PENAL CODE ANN. § 31.08(c). Appellant maintains that because there was conflicting evidence on the issue of fair market value, he was entitled to a jury instruction pursuant to § 31.08(c). Yet, therein lies the rub; evidence of value was presented, though it may be conflicting. This is of import given *Hauviller v. State*, No. 05-00-00751-CR, 2001 Tex. App. LEXIS 7680 (Tex. App.—Dallas Nov. 15, 2001, no pet.). There, the court explained

10

as follows: "[t]he clear provisions of Texas Penal Code section 31.08 provide that if either fair market value or replacement value can be ascertained, subsection (c) deeming a value is not applied." *Id.* at *15–16 (finding § 31.08(c) inapplicable since there was evidence of both the fair market and replacement value of the coin collection at issue). As we discussed earlier, not only did appellant concede the existence of "some evidence" supporting value, but also we found the record contained some evidence from which the jury could find the fair market value of the grass appropriated. So, value was actually ascertainable from the evidence, which, in turn, meant the trial court need not have submitted the instruction in question.

### Issue 5: Denial of Motion for New Trial

Finally, appellant contends the trial court abused its discretion by denying his motion for new trial. We overrule the issue.

More specifically, appellant believes the trial court abused its discretion in limiting his cross-examination of Doguet about a pending civil suit. Via his motion for new trial, he urged that the decision ran afoul of his right to impeach a witness with a previous inconsistent statement. Here, though, his argument differs. It is founded upon the denial of his constitutional right of confrontation. This variance is fatal. We reiterate that the grounds asserted on appeal must comport with those mentioned at trial. *See Wilson*, 71 S.W.3d at 349. Because they do not here, the contention before us was not preserved for review. *See Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008) (reiterating that even constitutional error may be forfeited by a failure to object).

Moreover, appellant sought to admit the entire pleading or complaint filed in the civil case. In briefing the issue before us, however, he does not attempt to explain what

11

aspects of the pleading served to impeach testimony of Doguet. He left that for us to discern. Yet, the burden was his to provide substantive analysis supporting the claim of error. *See* TEX. R. APP. P. 38.1(i); *see also Lucio v. State*, 351 S.W.3d 878, 896–97 (Tex. Crim. App. 2011) (stating that an appellant presents nothing for review if his complaint is unaccompanied by substantive analysis). Without attempting to illustrate what within the complaint or how particular aspects of it supposedly impeached Doguet, he inadequately briefed or explained how the trial court improperly imposed on his right to impeach Doguet.

Having overruled appellant's issues, we affirm the trial court's judgment of conviction.

Brian Quinn
Chief Justice

Do not publish.

12