Affirmed and Memorandum Opinion filed May 22, 2008








Affirmed and Memorandum Opinion filed May 22, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00119-CR

____________

 

JEREMY B. FONTENOT, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 184th
District Court

Harris County, Texas

Trial Court Cause No. 1027519

 



 

M E M O R A N D U M   O P I N I O N

Appellant Jeremy B. Fontenot challenges his conviction for
the felony offense of theft on the grounds that the evidence is legally and
factually insufficient to sustain the conviction.   We affirm. 

                        I.  Factual and Procedural Background








Fontenot and his co-defendant, Shaundretta Hunt, were
working as security guards at the Hewlett Packard complex in northwest Harris
County.  On March 28, 2005, during the evening shift, Fontenot and Hunt=s assignment was
to follow the cleaning crew and unlock whatever doors they needed opened to
complete their cleaning.  Building 10, level 7, was not scheduled to be
cleaned.  On the morning of March 29, however, six computers were reported
stolen from building 10, level 7.  

The State presented two primary witnesses.  First, the
security director and branch manager for Securitas, Fontenot and Hunt=s employer,
testified about the electronic key card system, Securitas=s policies and
procedures, his investigation into the computer thefts, and the value of the
missing computers.  The electronic key cards, or Aco-tags,@ were individually
numbered and one co-tag was assigned to each employee.  Temporary co-tags were
available for issue to employees who had lost or misplaced their co-tags.  When
a temporary co-tag was issued, Securitas would record the name of the person
requesting the co-tag and the number of the temporary co-tag issued.  Temporary
co-tags were used to access building 10, level 7, on the evening of March 28. 
There was no record for the issuance of those temporary co-tags.  The security
director saw no indications of forced entry during his inspection.  After
viewing surveillance photographs, he testified that Fontenot and Hunt entered
the facility around 6 p.m. with backpacks that appeared to be empty, and left
the facility after 10 p.m. with backpacks that appeared to be full.  It was
against Securitas=s policy to allow guards to bring
backpacks into the building.  The security director also testified that when he
interviewed Fontenot about the thefts, Fontenot was argumentative, combative,
and defensive, and eventually ended the interview and surrendered his badge.  

The security director said the six missing computers were
worth about $8800.  He arrived at this figure by taking the model numbers of
the missing laptops and obtaining from Hewlett Packard its cost for each
model.  He explained that Hewlett Packard purchased these computers through an
internal purchase-control system, and the cost to Hewlett Packard was below the
fair-market value.  Although Hewlett Packard owned the computers, Securitas was
responsible for them and gave Hewlett Packard a check for $8800 to account for
the loss.  








During cross-examination, the security director admitted
that persons other than Fontenot and Hunt could have been in the building that
night, including the janitorial staff, the real estate facilities personnel,
and Hewlett Packard employees.  He also admitted that he did not interview any
Hewlett Packard employees about the thefts, he did not remember interviewing
any of the janitorial staff, and he waited a month before he reported the theft
to the police.  Additionally, he did not save the entire surveillance video
from that evening, but retained still photographs taken from the video.  

The second primary witness for the State was the
security-systems manager for Securitas at the Hewlett Packard facility.  He
testified that the janitorial staff did not have keys to the individual
offices.  For the cleaning crew to enter an office, therefore, a security officer
must unlock the door.  He also testified that on the evening of the theft, Hunt=s assigned co-tag
and two temporary co-tags were used to enter building 10, level 7.  The
temporary co-tags used that evening had not been properly signed out, but
Fontenot and Hunt both had access to the security desk where the temporary
co-tags were kept.  Furthermore, each security officer was required to list on
his daily activity report the number of the co-tag he used on that day.  On
their daily activity reports for the evening of March 28, Fontenot and Hunt
both listed numbers that corresponded to no known co-tag despite each having
been assigned a working co-tag.

          When
asked to compare the arrival photograph of Fontenot and Hunt to the departure
photograph of Fontenot and Hunt, the security-systems manager testified that Awhen they came in
for work, they had their backpacks on, but, of course, as you can see, they=re not as bulky.@  He said that
during his interview with Fontenot regarding the thefts, Fontenot admitted that
it was him in the photographs but claimed that his backpack was bulky because
it contained his motorcycle jacket.  The security-systems manager also
testified that after the interview, Fontenot called and stated that he knew
where the laptops were but that he needed an apology before he would reveal
this information because he felt falsely accused of theft. 








Fontenot also testified at trial, stating that he did not
go to building 10, level 7, on the evening of March 28, 2005.  Fontenot
testified that he was never told not to wear a backpack and that he wore one
during every shift.  Several people were still in the facility after 6 p.m.
that evening, including the janitorial staff and their supervisor and several
Hewlett Packard employees.  He claimed that he did not have a co-tag other than
the one assigned to him.  Although he testified that he removed his motorcycle
jacket and placed it in his backpack before entering the building, he explained
that his backpack may have appeared larger at the end of his shift because he
removed the thick lining to his security jacket and put the lining in the
backpack during his shift.  On March 29, he received a call from the
human-resources manager requesting that he come to the facility to fill out
some papers.  Upon arriving at the facility, he was taken to the security
director and the security-systems manager to discuss the thefts.  Fontenot
testified that the two men accused him of stealing the computers, and that he
quit his job after the security director demanded that Fontenot reveal the
location of the stolen computers.  Fontenot admitted to later contacting the
security-systems manager, but testified that his purpose in so doing was to
provide information about a moving violation he received on the evening of the
thefts to prove that he had been riding his motorcycle.  On cross-examination,
he admitted that he could have obtained access to the temporary co-tags and to
the missing computers.  

Fontenot was charged by indictment with the felony offense
of theft.  He pleaded not guilty and trial was held before a jury.  The jury
found Fontenot guilty, and the trial court assessed punishment at confinement
for two years in the Texas Department of Criminal Justice, State Jail Division,
but suspended the sentence and placed him on community supervision for three
years.  He timely filed this appeal.    

                                          II.  Issues and Analysis








In three issues, Fontenot contends that the evidence was
(1) legally insufficient to support the verdict, (2) factually insufficient to
support the verdict, and (3) insufficient to show that the value of the
property stolen by Fontenot was over $1500 and under $20,000.  A.  Legal
Sufficiency

When evaluating a legal-sufficiency challenge, we view the
evidence in the light most favorable to the verdict.  Wesbrook v. State,
29 S.W.3d 103, 111 (Tex. Crim. App. 2000).  We must affirm if any rational
trier of fact could have found the essential elements of the crime beyond a
reasonable doubt.  McDuff v. State, 939 S.W.2d 607, 614 (Tex. Crim. App.
1997).  The standard is the same for both direct - and circumstantial -
evidence cases.  King v. State, 895 S.W.2d 701, 703 (Tex. Crim.
App. 1995).  We do not resolve any conflict of fact, weigh any evidence, or
evaluate any witness=s credibility, as this was the function of
the trier of fact.  See Adelman v. State, 828 S.W.2d 418, 421 (Tex.
Crim. App. 1992).  The jury may choose to believe or disbelieve any portion of
any witness= testimony.  Sharp v. State, 707 S.W.2d
611, 614 (Tex. Crim. App. 1986).  When faced with conflicting evidence, we
presume that the trier of fact resolved conflicts in favor of the prevailing
party.  Turro v. State, 867 S.W.2d 43, 47 (Tex. Crim. App.
1993).  We may overturn the verdict only if it is irrational or unsupported by
proof beyond a reasonable doubt.  Matson v. State, 819 S.W.2d
839, 846 (Tex. Crim. App. 1991).  








A person commits a theft Aif he unlawfully
appropriates property with intent to deprive the owner of the property.@  Tex. Penal Code
Ann. ' 31.03 (Vernon
Supp. 2007).  Fontenot contends that the evidence was legally insufficient to
prove that he committed a theft.  We disagree.  Fontenot was working security
at the Hewlett Packard facility on the evening of March 28, 2005.  He was
photographed by a surveillance camera entering the facility at the beginning of
his shift with a backpack and leaving the facility at the end of his shift with
a backpack that appeared larger, despite the policy that security guards were
not allowed to carry backpacks.  He registered a false co-tag number that
evening.  Temporary co-tags and Hunt=s assigned co-tag
were used to access building 10, level 7, which Fontenot and Hunt were not
scheduled to enter during their shift.  Six computers were reported stolen from
building 10, level 7, the following morning.  Fontenot placed a phone call to
the security-systems manager and claimed to know the location of the missing
laptops, but demanded an apology before he would reveal the location. 
Additionally, Fontenot admitted that he had access to the temporary co-tags and
to the computers.  We conclude that a rational trier of fact could have found
the essential elements of theft beyond a reasonable doubt based on this
evidence.  

B. 
Factual Sufficiency 

When reviewing the factual sufficiency of the evidence to
support a conviction, we view all the evidence in a neutral light, favoring
neither party.  See Watson v. State, 204 S.W.3d 404, 408 (Tex.
Crim. App. 2006).  We may set aside the verdict if the evidence is so weak that
the verdict is clearly wrong and manifestly unjust, or if the verdict is
against the great weight and preponderance of the evidence.  Id. at
414-15.  We must not, however, intrude upon the fact finder=s role as the sole
judge of the weight and credibility given to any witness=s testimony.  See
Fuentes v. State, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). 
Although we may disagree with the jury=s conclusions, we
must avoid substituting our judgment for that of the jury, particularly in
matters of credibility.  See Watson, 204 S.W.2d at 414. 








Fontenot argues that the evidence was factually
insufficient to support the verdict.  We disagree.  Fontenot testified that he
was unaware of any policy prohibiting him from wearing a backpack and that his
backpack may have appeared larger at the end of his shift because he removed
the lining from his security jacket and placed it into the backpack during his
shift.  He claimed that he did not go onto level 7 of building 10 on March 28,
2005, and that he did not have a co-tag other than the one issued to him.  He
further testified that although he did contact the security-systems manager, he
had no knowledge about the location of the stolen computers and he had made no
statement claiming such knowledge.  However, the trier of fact was entitled to
believe or disbelieve any or all of Fontenot=s testimony and
resolve the evidence as they saw fit.  See Adelman, 828 S.W.2d at 421. 
Using these facts and the facts recited from the record in the discussion of
legal sufficiency, we conclude that this evidence is not so weak that the fact
finder=s determination is
clearly wrong or manifestly unjust.  Therefore, we conclude that the evidence
is factually sufficient to support the jury=s verdict.

C. 
Value and Ownership

A theft is a state-jail felony if the value of the property
stolen $1500 or more, but less than $20,000.  Tex. Penal Code Ann. '
31.03(e)(4)(Vernon Supp. 2007). The State presented testimony from the security
director to prove that the value of the computers was between $1500 and
$20,000, thus qualifying this theft as a state-jail felony.  

Fontenot contends that the trial court should not have
permitted the security director to testify as to the value of the computers. 
We disagree.  An owner of property is competent to testify as to the value of
his own property.  Jones v. State, 814 S.W.2d 801, 803 (Tex. App.CHouston[14th
Dist.] 1991, no pet.) (citing Sullivan v. State, 701 S.W.2d 905,
908 (Tex. Crim. App. 1986).  An owner is a person who had Atitle to the
property, possession of the property, whether lawful or not, or a greater right
to possession of the property@ than the accused.  Tex. Penal Code. Ann. '
1.07(a)(35)(A)(Vernon 2003).  The security director testified that as a
representative of Securitas, he had a greater right to possession of the
computers than Fontenot.  Securitas was responsible for the loss of the
computers and presented Hewlett Packard with a check for $8800 to compensate
for the loss.  Therefore, the security director was competent to testify as to
the value of the property.  See id.








Fontenot further contends that the evidence is insufficient
to prove the value of the missing computers.  We disagree.  Value can be
determined by ascertaining the fair-market value of the property at the time of
the offense or the cost of replacing the property within a reasonable time
after the offense.  ' 31.08(a)(1),(2) (Vernon 2003).  The
security director arrived at the $8800 figure by taking the model numbers of
the six computers, and searching through an internal purchase-control system to
obtain the amount Hewlett Packard paid for each computer, noting that the
amount Hewlett Packard paid was below the fair-market value.  The security
director then added the six amounts Hewlett Packard paid and determined that
the cost of replacing the six computers was $8800.  We conclude that the jury=s finding that the
value of the computers was over $1500 and under $20,000 was legally and
factually sufficient.  

Accordingly, we affirm the trial court=s judgment.       

 

 

 

/s/      Jeff Brown

Justice

 

 

 

 

Judgment rendered and Memorandum
Opinion filed May 22, 2008.

Panel consists of Justices Yates,
Guzman, and Brown.

Do Not Publish C Tex.
R. App. P. 47.2(b).