

In The

# Court of Appeals
## Seventh District of Texas at Amarillo

_____

Nos. 07-11-00419-CR and 07-11-00420-CR
_____

DAISY GUTIERREZ-RODRIGUEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the County Court at Law No. 2
Brazos County, Texas
Trial Court Nos. 11-00232-CRM-CCL2 and 11-00234-CRM-CCL2
Honorable P. K. Reiter, Presiding

June 27, 2013

OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant, Daisy Gutierrez-Rodriguez, was convicted of theft,[1] a Class B misdemeanor, in two cases following a consolidated jury trial and was sentenced to 180 days confinement and a $200 fine in each case. The trial court suspended the imposition of both sentences and placed Appellant on community supervision for a term

_____
[1]See TEX. PENAL CODE ANN. § 31.03(a), (e)(2) (WEST SUPP. 2012).

of one year, subject to certain conditions. In two points of error, Appellant asserts (1) the evidence is legally and factually insufficient to establish theft and (2) the trial court erred by requiring Appellant to pay restitution on stolen items for which she was not charged or convicted. We modify the conditions of community supervision attached to each judgment to delete the requirement that Appellant pay combined restitution of $1215, and affirm each judgment as modified.

**Background**

CAUSE NO. 11-00232-CRM-CCL2

In Cause No. 11-00232-CRM-CCL2, an information was filed alleging Appellant, on or about December 13, 2010, unlawfully appropriated, by acquiring or otherwise exercising control over, property, to-wit: "one Gormin (sic) GPS, serial no. 1C9174760," of the value of $50 or more but less than $500, from the owner, Ronald Blair, without his effective consent and with intent to deprive him of the property.

At trial, Officer Tristen Lopez of the College Station Police Department testified that on December 13, 2010, he and other officers were taking burglary reports in the Pebble Creek residential area, where more than twenty complaints had been received. In one of those burglary reports, Blair indicated that, at around 7:30 a.m. that morning, he noticed items missing from his pickup. He identified those items and their estimated value as follows: black phoenix flashlight ($100), two Kershaw knives ($200), a bag containing $5 change, XM satellite receiver ($150), and a black Garmin NUVI GPS unit ($300). Blair further indicated he had previously programmed "3500 Farah" as his home address in the GPS device.

At trial, Blair testified that, on December 13, he discovered the dashboard in his pickup had been torn apart. In addition to the items listed in Officer Lopez's report, he testified a ZUNE radio and camera were also missing. The police recovered a matching GPS device from a pawnshop and returned it to him. Blair was confident the item belonged to him because "3500 Farah" was entered as its home address and he also recognized other addresses he had entered. He estimated the device had a replacement value of $200 and that it would cost more than $50 to purchase a new one. He testified the police also returned his XM receiver, and a bag containing $5 change but he was still missing the knives, flashlight and ZUNE radio which he estimated had a value of $415.

Elana Kozak testified she was working at a pawnshop on December 15, 2010, when Appellant sold her a black Garmin NUVI GPS device, serial number 1C9174760, for $30. A pawn ticket for the item indicated that it was bought from Appellant. Kozak testified Appellant identified herself with her driver's license and affirmed that the item was not stolen and she was free to sell it. She estimated the pawnshop would have sold the GPS device for $69 to $79 if it hadn't been confiscated by the police as stolen property.

CAUSE NO. 11-00234-CRM-CCL2

In Cause No. 11-00234-CRM-CCL2, an information was filed alleging Appellant, on or about December 15, 2010, unlawfully appropriated, by acquiring or otherwise exercising control over, property, to-wit: one iPod, serial no. YM9379NV71Y, of the

3

value of $50 or more but less than $500, from the owner, Daniel McCoy, without his effective consent and with intent to deprive him of the property.

At trial, McCoy testified that, on December 15, 2010, someone broke into his pickup and stole an iPod, iPhone, and GPS device.[2] A blue faceplate for his radio was also missing. The police recovered a matching iPod from a pawnshop and returned it to him. McCoy was confident that the item recovered by the police belonged to him because, in addition to being the same model, type and color, it had originally belonged to his roommate and his roommate's name was on the iPod's display screen. The iPod also contained music McCoy attributed to himself. For the items he did not recover, he estimated values of $250 for the faceplate, $300 for the iPhone, and $250 for the GPS device. He also testified the police report erroneously described his iPod as blue when it was actually black to dark grey. He described the radio faceplate as being blue.

Officer Mikel Stephens of the City of College Station Police Department responded to McCoy's complaint. He testified that, after examining the pickup, he made a burglary report listing the four items that had been taken. He testified that even though he did not see the iPod, he listed it as blue. According to his testimony, it was not uncommon for there to be some discrepancy in a stolen property description. He indicated there were no other burglaries in the area.

Chad Perez testified he was working at a pawnshop on December 14, 2010, when Appellant sold him a silver iPod, serial number YM9379NV71Y, for $60. Contemporaneous with the sale, he filled out a store receipt indicating Appellant was

---

[2]He also testified his iPod may have been taken prior to December 15 because he was using his iPhone as a substitute and may not have noticed it missing until the other items were stolen.

4

the seller.  The store receipt also included information from Appellant's driver's license.  Perez testified that, by signing the receipt, Appellant represented she was the owner of the iPod and had the right to sell it.  He estimated the pawnshop would have resold the iPod for $79.99 if it had not been confiscated by the police as stolen property.

Detective Travis Lacox testified he investigated a group of burglaries that occurred in December 2010 in the Pebble Creek residential area.  The initial complaint was from a homeowner who heard his dog barking at approximately 6:30 a.m. and went outside to discover a small black car fitted with a rear spoiler parked in his driveway.  When its driver spied him and sped away, a number of items in plastic bags were left on his lawn.  Some of the items belonged to the homeowner, while other items belonged to his neighbors.

On December 16, 2010, Detective Lacox learned that Appellant's boyfriend, Jamie Rodriguez, had pawned a GPS device taken from the Pebble Creek area.  He also learned Rodriguez had access to Appellant's black Milan, which was fitted with a rear spoiler.  After locating Rodriguez, a high speed chase ensued that ultimately resulted in Rodriguez wrecking the Milan and escaping on foot.  When the vehicle was inventoried, the trunk contained iPods, GPS devices, knives, tools, compact discs, device accessories, and a bag containing $5 change.  Many of the items were identified as having been taken in the Pebble Creek area burglaries.

Due to Rodriguez's relationship with Appellant and the fact that stolen property had been found in the trunk of her car, Detective Lacox seized any items pawned by Rodriguez or Appellant in the past year.  Those efforts resulted in the recovery of

Blair's GPS device, which he identified by the addresses in the device, and McCoy's iPod, which contained music described by McCoy and the display showing his roommate's name.

Detective Lacox subsequently contacted Appellant and she willingly came to the police station. He testified she indicated her boyfriend bought the items from unidentified persons at their apartment complex and she pawned them because Rodriguez did not have an ID. In the taped interview, Appellant ultimately admitted she was aware some of the items were stolen but didn't think she would get in any trouble. Detective Lacox also testified there was no way of knowing if Appellant participated in, or knew anything about, the Pebble Creek burglaries.

At trial, Appellant testified that Rodriguez had come home on various occasions with items that she would pawn for him because he didn't have an ID. She indicated that, at the time McCoy's iPod and Blair's GPS device were pawned, she wasn't aware they were stolen, but instead assumed Rodriguez had purchased them. She testified that her videotaped statement to Detective Lacox "came out wrong." She also explained that, prior to her interview, she figured the items were stolen because Detective Lacox wanted to speak with her about the items she had pawned.

At the conclusion of the evidence, the jury found Appellant guilty as charged in each information. Appellant chose to have the trial court assess punishment and, without hearing additional evidence, the trial court originally assessed her sentence in each case at confinement in the Brazos County Jail for six months, probated, and a fine of $500, not probated. A discussion concerning restitution ensued, after which the trial

6

court reduced the fine to $200 in each case, probated, and added a condition that Appellant pay restitution to Blair in the amount of $450, and McCoy in the amount of $800. The next day, the trial court signed its *Judgment and Sentence* in each case, incorporating conditions of community supervision which included a requirement that Appellant pay combined restitution of $1215 ($415 in Cause No. 11-00232-CRM-CCL2 and $800 in Cause No. 11-00234-CRM-CCL2). This appeal followed.

**Discussion**

Appellant asserts the evidence was legally insufficient to prove theft because the State failed to establish that (1) the iPod stolen from McCoy's pickup was the same iPod pawned by her, (2) the value of Blair's GPS met the requisite amount for a Class B misdemeanor theft, and (3) she knew the GPS and iPod were stolen when she pawned them. She also contends there was no factual basis for ordering that she pay restitution as part of her community supervision in either case.

A person commits the offense of theft if he or she unlawfully appropriates property with the intent to deprive the owner of that property. *See* Tex. Penal Code Ann. § 31.03(a) (West Supp. 2012). Appropriation of property is unlawful if it is done without the owner's consent, or the property is stolen and the actor appropriates the property knowing it was stolen by another. *Id.* at § 31.03(b)(1)-(2). The offense is a Class B misdemeanor if the value of the stolen property is $50 or more but less than $500. *Id.* at § 31.03(e)(2)(A)(i).

7

## II. SUFFICIENCY OF THE EVIDENCE

In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all the evidence in a light most favorable to the verdict and determine, based on that evidence and the reasonable inferences drawn therefrom, whether a rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt. *Lucio v. State,* 351 S.W.3d 878, 894 (Tex.Crim.App. 2011) (citing *Jackson v. Virginia,* 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); *Brooks v. State,* 323 S.W.3d 893, 895 (Tex.Crim.App. 2010). In conducting our review, we do not sit as a thirteenth juror and may not substitute our judgment for that of the fact-finder by re-evaluating the weight and credibility of the evidence. *Isassi v. State,* 330 S.W.3d 633, 638 (Tex.Crim.App. 2010). Rather, we defer to the fact-finder to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic to ultimate facts. *Id.*

Appellant asserts she could not have pawned McCoy's iPod because the pawnshop receipt shows it was pawned on December 14, whereas McCoy reported it as being stolen on December 15. She also asserts the State's witnesses were inconsistent in their description of the iPod's color, i.e., McCoy described the iPod as black or dark grey, Perez described it as silver, and Officer Stephens described it as blue.

At most, the pawnshop receipt and the conflicting evidence on the iPod's color raised a fact issue at trial to be decided by the jury, i.e., whether the iPod pawned by Appellant was McCoy's stolen iPod. Perez testified Appellant sold the iPod to the pawn

shop and it was subsequently confiscated by the police as stolen property. When the police returned his iPod, McCoy testified he was confident the iPod belonged to him because it contained music attributable to him and it was the same model, type, and color. He also testified the iPod originally belonged to his roommate "Garrett" and the display screen on the iPod recovered by the police showed "Garrett." Although the pawnshop ticket for the iPod was dated the day before McCoy reported the burglary, McCoy testified his iPod could have been gone longer because he was substituting his iPhone for his iPod and he may not have missed it until he discovered the burglary on December 15. Considering the evidence in a light most favorable to the verdict, we find a rational fact-finder could have found that the iPod pawned by Appellant was McCoy's stolen iPod. We will not substitute our judgment for that of the jury. *See Isassi,* 330 S.W.3d at 638.

Appellant also asserts the State failed to establish the value of Blair's GPS device as being more than $50. Although the pawnshop paid Appellant $30 for Blair's GPS, Blair testified its replacement value was $200 and it would cost more than $50 to purchase a new one. Value for the purposes of the theft statute is the fair market value of the property at the time and place of the offense, or if the fair market value cannot be ascertained, the cost of replacing the property within a reasonable time after the theft. TEX. PENAL CODE ANN. § 31.08(a) (WEST 2011). In addition, an owner is competent to testify to the value of property, even though he is not qualified as an expert on value; *Morales v. State,* 2 S.W.3d 487, 489 (Tex.App.—Texarkana 1999, pet. ref'd) (citing *Sullivan v. State,* 701 S.W.2d 905, 909 (Tex.Crim.App. 1986)), and "[s]uch testimony is sufficient evidence for the trier of fact to determine value, based on the witness'

9

credibility." *Id.* Again, we will not substitute our judgment for that of the jury and, accordingly, we find the State's evidence was sufficient to establish the requisite amount for a Class B misdemeanor conviction.

As to whether Appellant knew the property was stolen when she pawned it, that too was a fact issue to be decided by the jury at trial. Appellant testified she didn't know the iPod or GPS were stolen but, in a prior statement, said she did. Further, whether Detective Lacox misunderstood her statement on the videotape or Appellant correctly explained the import of her statement was a matter for the jury to decide after hearing all the testimony and watching the videotape in court. In closing argument, Appellant's attorney primarily argued that she did not know the items were stolen and her explanation of the videotaped statement was the correct one. Judging from the verdict, the jury rejected her explanation and found Detective Lacox's testimony to be more credible. Appellant's first point of error is overruled.

## II. RESTITUTION

In addition to any fine authorized by law, a sentencing court may order the defendant to make restitution to any victim of the offense. *See* TEX. CODE CRIM. PROC. ANN. art. 42.037(a) (WEST SUPP. 2012). As punishment, restitution attempts to redress wrongs for which a defendant has been charged and convicted in court. *Cabla v. State,* 6 S.W.3d 543, 546 (Tex.Crim.App. 1999), *cert. denied,* 529 U.S. 1092, 120 S.Ct. 1730, 146 L.Ed.2d 650 (2000). *See Martin v. State,* 874 S.W.2d 674, 679-80 (Tex.Crim.App. 1994) ("Notions of 'justice and fairness' dictate that a defendant be punished only for the crime of which he [or she] was convicted.") An appellate court reviews challenges to

10

restitution orders under an abuse of discretion standard; *see Cartwright v. State*, 605 S.W.2d 287, 289 (Tex.Crim.App. 1980); *Drilling v. State*, 134 S.W.3d 468, 469 (Tex.App.—Waco 2004, no pet.), and abuses its discretion when it acts without reference to any guiding rules or principles or acts arbitrarily or unreasonably, or when its decision is so clearly wrong that it lies outside the zone of reasonable disagreement. *Montgomery v. State,* 810 S.W.2d 372, 380 (Tex.Crim.App. 1991) (op. on reh'g).

An abuse of discretion in setting restitution usually implicates due process considerations. *See Campbell v. State,* 5 S.W.3d 693, 697 (Tex.Crim.App. 1999) ("A trial court may not order restitution for an offense for which the defendant is not criminally responsible."); *Gordan v. State,* 707 S.W.2d 626, 629-30 (Tex.Crim.App. 1986) (holding that it would be a denial of due process to order the defendant to pay for costs associated with a crime for which he was found not criminally responsible). Due process places three limitations on the restitution a trial court may order: (1) the amount must be just and supported by a factual basis within the record; (2) the restitution ordered must be only for the offense for which the defendant is criminally responsible; and (3) the restitution must be only for the victim or victims of the offense for which the defendant is charged. *See Campbell,* 5 S.W.3d at 696-97; *Drilling,* 134 S.W.3d at 470.

The "Conditions of Community Supervision" attached to each *Judgment* requires Appellant to make restitution for items stolen from Blair's and McCoy's pickups that were not recovered by the police, i.e., Blair's two knives, flashlight and ZUNE radio collectively valued at $415 in Cause No. 11-00232-CRM-CCL2 and McCoy's radio faceplate, iPhone, and GPS collectively valued at $800 in Cause No. 11-00234-CRM-CCL2. The Information filed in each action, however, charges Appellant with theft of

11

either a GPS device or an iPod and no other items. The evidence at trial proved Appellant only *pawned* the GPS device and iPod knowing they were stolen. The evidence did not establish that Appellant was guilty of either burglary. Both items were returned to their owners. There was no charge to the jury on the law of parties or the offense of burglary of a vehicle; *see Goff v. State,* 931 S.W.2d 537, 544 (Tex.Crim.App. 1996) (holding "[w]here there is no charge on the law of parties a defendant may only be convicted on the basis of his [or her] own conduct"), *cert. denied*, 520 U.S. 1171, 117 S.Ct. 1438, 137 L.Ed.2d 545 (1997), and Detective Lacox testified there was no way of knowing if Appellant participated in the actual burglaries or knew anything about them.

Based upon this record, we find the trial court abused its discretion by ordering restitution based on offenses for which Appellant was not found criminally responsible and the trial court's orders lacked any factual basis in the record. *See Gordon,* 707 S.W.2d at 629 ("when the defendant's criminal culpability for a third party's losses has not been adjudicated it would be unfair to order the defendant to pay those losses"). *See also Garcia v. State,* 773 S.W.2d 694, 697 (Tex.App.—Corpus Christi 1989, no pet.) (trial court lacked authority to order restitution to victims of offenses for which appellant had not been adjudicated guilty).[3] Accordingly, we modify the *Judgments* in each case to delete the requirement that Appellant pay restitution. *See Ex parte Pena,* 739 S.W.2d 50, 51 (Tex.Crim.App. 1987) (where trial judge imposes an invalid condition, "the proper remedy is to reform the judgment of conviction by deleting the

---

[3]The State asserts Appellant waived any challenge to the trial court's restitution order, however, as stated above, due process considerations require that the amount of restitution be supported by a factual basis within the record. In that context, a defendant may raise factual insufficiency for the first time on appeal. *See Mayer v. State,* 309 S.W.3d 552, 555-56 (Tex.Crim.App. 2010). *See also Idowu v. State,* 73 S.W.3d 918, 921-22 (Tex.Crim.App. 2002).

condition").  *See also Reasor v. State,* 281 S.W.3d 129, 135 (Tex.App.—San Antonio 2008, pet. ref'd) (community supervision order modified to delete portion of judgment imposing restitution).  Appellant's second point of error is sustained.

## CONCLUSION

We modify the "Conditions of Community Supervision" attached to the *Judgments* in Cause Nos. 11-00232-CRM-CCL2 and 11-00234-CRM-CCL2 to delete the requirement that Appellant pay $415 and $800 in restitution respectively and affirm the *Judgments* as modified.

Patrick A. Pirtle
Justice

Publish.