In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO.  09-15-00249-CR
_____

JOHN DOUGLAS EDWARDS, Appellant

V.

THE STATE OF TEXAS, Appellee

_____

On Appeal from the 221st District Court
Montgomery County, Texas
Trial Cause No. 13-02-01583 CR

_____

**MEMORANDUM OPINION**

Appellant John Douglas Edwards appeals his conviction of theft from a nonprofit organization.[1] In four issues on appeal, Edwards challenges the

_____

[1]After Edwards's appeal was dismissed for want of jurisdiction, Edwards filed an application for a writ of habeas corpus complaining that he was denied his right to appeal because his counsel failed to file a timely notice of appeal. The Texas Court of Criminal Appeals ordered that Edwards be allowed to file an out-of-time appeal. *See Edwards v. State*, No. 13-14-00375-CR, 2014 WL 4795753, at *1 (Tex. App.—Corpus Christi Sept. 25, 2014, no pet.) (mem. op., not designated for publication, *habeas corpus granted*, *Ex parte Edwards*, No. WR-66,841-02,

1

sufficiency of the evidence, the jury charge, and the trial court's authority to impose a condition on his parole. The State concedes error with respect to the placement of a condition on Edwards's parole. We reform the trial court's judgment by deleting the language imposing a condition on Edwards' parole and affirm the judgment as reformed.

## Background

The State charged Edwards with the third-degree felony offense of theft from a nonprofit organization of property valued between $1,500 and $20,000.[2] The State alleged that Edwards stole two air conditioner units, with a value of at least $1,500 but less than $20,000 from J.H., the owner of the property. The State further alleged that "the owner of the property was a nonprofit organization, to-wit: Crossroads Assembly of God Church."

---

2015 WL 2452777, at *1 (Tex. Crim. App. May 20, 2015) (not designated for publication)).

[2] *See* Act of May 23, 2009, 81st Leg., R.S., ch. 295, § 1, sec. 31.03(e), 2009 Tex. Gen. Laws 804, 804 (amended 2015) (current version at Tex. Penal Code Ann. § 31.03(e) (West Supp. 2015)) (providing offense is a state jail felony when the value of the property stolen is $1,500 or more but less than $20,000); Act of May 29, 2009, 81st Leg., R.S., ch. 903, § 1, sec. 31.03(f), 2009 Tex. Gen. Laws 2433, 2433 (current version at Tex. Penal Code Ann. § 31.03(f)(3)(B) (West Supp. 2015)) (enhancing punishment to the next higher category of offense if shown that the owner of the property was a nonprofit organization); Act of May 29, 2009, 81st Leg., R.S., ch. 903, § 2, sec. 31.03(h), 2009 Tex. Gen. Laws 2433, 2433-434 (current version at Tex. Penal Code Ann. § 31.03(h)(3) (West Supp. 2015)) (providing definition of nonprofit organization).

To prove that Crossroads Assembly of God Church was a nonprofit organization the State offered the testimony of J.H., the Pastor of the Church when the theft occurred. J.H. testified that he oversaw every department in the Church, including the financials. According to J.H., the Church is a nonprofit organization and the Certificate of Fact, dated May 31, 2013, and filed with the Texas Office of the Secretary of State, indicates that the Church is a "Domestic Nonprofit Corporation[,]" that was formed in 1998 and still exists. Additionally, Officer Ryan Simpson of the Splendora Police Department testified regarding his investigation of the stolen units. Simpson testified that the Church is a nonprofit organization.

During the trial, the State offered the testimony of several witnesses to prove the value of the stolen units. Roy Moores Jr. testified that he and Edwards stole two air conditioner units from the Church. Moores knew a person who bought stolen goods and who would buy the units for "$200 a piece all day long, as many as we could get." Moores and Edwards sold the units for $400. When the State asked Moores if he considered selling the units to anyone else for more money, Moores testified that he did not because it was "quick and easy." Lieutenant Christopher Wall of the Splendora Police Department confirmed that the stolen units were purchased for $400.

3

J.H. testified that it cost $1,100 to have the stolen units reinstalled and $4,600 to replace the units. Richard Bryant, who owns Bryant Air-Conditioning and Heating, testified regarding the work he performed for J.H. At the request of J.H., Bryant reinstalled the two five-ton units and charged $1,100, which included Freon, parts, and labor. At the time Bryant reinstalled the stolen units, they had a scrap value of $120 each and a resale value of $700 or $800 each. According to Bryant, there is a small market for used units, but he would only sell a used unit if it was in exceptional condition. Bryant explained that the units broke down because they were damaged during the theft, requiring him to install a new three-ton unit for $1,700 and a new five-ton unit for $2,200.

A jury found Edwards guilty of theft from a nonprofit organization, a third-degree felony. Edwards pleaded true to two enhancement paragraphs, and following a punishment hearing, the trial court assessed Edwards's punishment at fifty-two years in prison and ordered that Edwards pay restitution in the amount of $5,000. *See* Tex. Penal Code Ann. § 12.42(d) (West Supp. 2015) (enhancing punishment for defendant who has previously been convicted of two felony offenses to life in prison, or for any term of not more than 99 years or less than 25

4

years).[3] The trial court also included a special order in its judgment that added a condition to Edwards's parole, ordering Edwards to wear a t-shirt that says, "'I am a thief'" for as long as he is on parole.

## Issues

In issues one and two, Edwards complains that the evidence is insufficient to support his conviction of theft from a nonprofit organization of property valued between $1,500 and $20,000. Under a legal sufficiency standard, we assess all the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The fact finder is the ultimate authority on the credibility of the witnesses and the weight to be given their testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981). We give deference to the jury's responsibility to fairly resolve conflicting testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. If the record contains conflicting inferences, we must presume that the fact finder resolved such facts in favor of the verdict and defer to that resolution. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App.

---

[3]We cite to the current version of section 12.42 of the Texas Penal Code because the subsequent amendments do not affect the outcome of this appeal.

2007). We also "'determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 16-17).

In issue one, Edwards argues the evidence was insufficient to prove that the Church is a nonprofit organization as defined by section 31.03 of the Penal Code. *See* Act of May 29, 2009, 81st Leg., R.S., ch. 903, § 2, sec. 31.03(h), 2009 Tex. Gen. Laws 2433, 2433-434 (amended 2015) (defining nonprofit organization as an organization that is exempt from federal income taxation under Section 501(a), Internal Revenue Code of 1986, by being described as an exempt organization by Section 501(c)(3) of that code). According to Edwards, there was no evidence before the jury regarding the Church's tax exempt status.

The record shows J.H. oversaw the Church's financials when he served as the Pastor. J.H. explained the Church was incorporated and designated as a nonprofit organization before he became Pastor. J.H. testified that the Certificate of Fact filed with the Secretary of State shows the Church is an existing nonprofit organization. The jury also heard Officer Simpson, the investigating officer, testify that the Church was a nonprofit organization.

While Edwards argues on appeal that the evidence fails to show that the Church is "exempt from federal income taxation under Section 501(a), Internal

Revenue Code of 1986, by being described as an exempt organization by Section 501(c)(3) of that code," J.H. testified that the Church's application to be designated as a nonprofit organization under 501(c)(3) was done before he became Pastor. *See* 26 U.S.C.A. § 501(a), (c)(3) (exempting from taxation corporations organized and operated exclusively for religious purposes); *see also* 26 U.S.C.A. § 508(a), (c)(1)(A) (exempting from application requirements "churches, their integrated auxiliaries, and conventions or associations of churches"). Based on the evidence presented at trial, we conclude a rational jury could have found the Church was a nonprofit organization as defined by section 31.03(h)(3) of the Penal Code. *See* Act of May 29, 2009, 81st Leg., R.S., ch. 903, § 2, sec. 31.03(h), 2009 Tex. Gen. Laws 2433, 2433-434 (amended 2015); *Jackson*, 443 U.S. at 318-19; *Hooper*, 214 S.W.3d at 13. We overrule issue one.

In issue two, Edwards argues the State presented insufficient evidence to prove that the value of the stolen property was at least $1,500 to support a third-degree felony conviction. *See* Act of May 23, 2009, 81st Leg., R.S., ch. 295, § 1, sec. 31.03(e), 2009 Tex. Gen. Laws 804, 804 (amended 2015). Edwards challenges the sufficiency of the evidence to prove this element, arguing that the evidence showed that the fair market value of the two units when the theft occurred was below the $1,500 threshold. Edwards also complains the State improperly relied on

the replacement cost of the units to establish value because there was no evidence that a fair market value could not be ascertained. Edwards further argues that the evidence the State presented regarding the replacement cost failed to establish the value of the stolen units because there was no evidence showing the old and new units were comparable.

The value of the property taken is "(1) the fair market value of the property or service at the time and place of the offense; or (2) if the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the theft." Tex. Penal Code Ann. § 31.08(a) (West Supp. 2015).[4] The jury charge defined "'[v]alue'" as "the fair market value of the property at the time and place of the offense;" or "if the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the theft;" or "if property has value that cannot be reasonably ascertained by the criteria set forth above, the property is deemed to have value of $500 or more but less than $1,500."

Fair market value is defined by caselaw as the amount the property would sell for in cash given a reasonable time for selling it. *Uyamadu v. State*, 359 S.W.3d 753, 759 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). For purposes

---

[4]We cite to the current version of section 31.08 because the subsequent amendment does not affect the outcome of this appeal.

of a theft prosecution, fair market value is "'the price the property will bring when offered for sale by one who desires to sell, but is not obligated to sell, and is bought by one who desires to buy, but is under no necessity of buying." *Id.* (quoting *Valdez v. State*, 116 S.W.3d 94, 98 & n.1 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd)). "Ascertainment of market value presupposes an existing, established market." *Infante v. State*, 404 S.W.3d 656, 661 (Tex. App.—Houston [1st. Dist.] 2012, no pet.). "[T]he relevant market is not that of the thief, but of the party from whom the item was stolen." *Valdez*, 116 S.W.3d at 99.

The owner of the property or a non-owner may give testimony regarding the property's value. *See Sullivan v. State*, 701 S.W.2d 905, 908 (Tex. Crim. App. 1986). "When the proof of value is given by a non-owner, the non-owner must be qualified as to his knowledge of the value of the property and must give testimony explicitly as to the fair market value or replacement value of the property." *Id.* at 909; *see also* Tex. R. Evid. 702. Replacement value is relevant only when other evidence establishes that the fair market value was unascertainable. *See* Tex. Penal Code Ann. § 31.08(a); *Curtis v. State*, 385 S.W.3d 636, 639 (Tex. App.—Amarillo 2012, no pet.). Additionally, a theft conviction cannot depend on items not alleged to have been stolen, and when the only evidence of value includes the value of items not stolen, there is in effect no evidence to show the value exceeded the

minimum amount necessary to support the conviction. *Riggs v. State*, 561 S.W.2d 196, 197 (Tex. Crim. App. 1978); *Smiles v. State*, 298 S.W.3d 716, 719 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Thus, evidence of value should not include the cost of labor, parts, or other tangibles. *See Smiles*, 298 S.W.3d at 719-20; *York v. State*, 721 S.W.2d 605, 607-08 (Tex. App.—Fort Worth 1986, pet. ref'd).

The record shows the jury was presented with conflicting evidence of fair market value. *See Keeton v. State*, 803 S.W.2d 304, 306 (Tex. Crim. App. 1991) (presenting trier of fact with two values to choose between in determining fair market value). Moores testified that he and Edwards sold the units for $400. However, the fair market value that Moores testified to was based on the market of a thief, because Moores sold the units to a person who bought stolen air conditioner units at any time for a set price, regardless of the condition. *See Valdez*, 116 S.W.3d at 99. Moores described his market for selling stolen units as "quick and easy."

Bryant, on the other hand, testified that he had been in the air conditioning business for thirty-nine years providing sales, service, and installation. *See Sullivan*, 701 S.W.2d at 909 (providing that a non-owner must be qualified as to his knowledge of the value of the property to testify about fair market value).

10

According to Bryant, there was a small market for used air conditioner units, and shortly after the offense occurred, he determined the resale value of the stolen units was $700 or $800 each. *See Infante*, 404 S.W.3d at 651.

In determining the fair market value of the stolen units, the jury resolved the conflicting evidence concerning value in the favor of the Church. *See Keeton*, 803 S.W.2d at 306; *Valdez*, 116 S.W.3d at 99. Bryant's testimony established that the fair market value of the stolen units was between $1,400 and $1,600. Based on Bryant's testimony, a rational jury could have concluded that the fair market value of the stolen units was more than the $1,500 threshold amount. We conclude the evidence of the fair market value of the stolen units is sufficient to support a third-degree felony conviction. *See* Act of May 23, 2009, 81st Leg., R.S., ch. 295, § 1, sec. 31.03(e), 2009 Tex. Gen. Laws 804, 804 (amended 2015); *Jackson*, 443 U.S. at 318-19; *Hooper*, 214 S.W.3d at 13. We overrule issue two.

In issue three, Edwards complains the trial court erred by including replacement cost language in the jury charge to define "value," causing him harm. According to Edwards, the trial court should have excluded replacement cost language because the State presented no evidence that fair market value could not be ascertained. Edwards's counsel objected to the trial court including language regarding the replacement cost and requested that the trial court define value as

11

"the fair market value of the property or service at the time and place of the offense."

According to Edwards's counsel, because there was evidence of an ascertainable market value, the issue of replacement cost is not reached. In support of his argument, Edwards's counsel points to Bryant's testimony, which was not objected to, stating that the value of the stolen units on the open market was $700 or $800 each. The State argued that Bryant's testimony failed to provide a "clear fair market value[,]" thereby requiring that the jury be instructed on replacement cost. The trial court denied Edwards' counsel's proposed definition of "value" and overruled his objection to the definition included in the charge, stating that it is a fact issue for the jury and declining to determine whether the evidence concerning fair market value was legally sufficient.

When reviewing a claim of jury charge error, we must first determine whether error exists. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). Jury charge error requires reversal when the defendant has properly objected to the charge at trial and we find "'some harm'" to the defendant's rights. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). A trial court errs when it charges a jury on a theory of conviction that is not supported by the evidence.

*Sanders v. State*, 814 S.W.2d 784, 787 (Tex. App.—Houston [1st Dist.] 1991, no pet.).

The definition of value in the jury charge tracked the language of the statute. The jury charge defined "'[v]alue'" as "the fair market value of the property at the time and place of the offense;" or "if the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the theft;" or "if property has value that cannot be reasonably ascertained by the criteria set forth above, the property is deemed to have value of $500 or more but less than $1,500." *See* Tex. Penal Code Ann. § 31.08(a). The record shows that the State presented conflicting testimony regarding the fair market value of the stolen units, as well as evidence regarding the replacement cost of the units. When contradictory evidence is presented to the jury as to value, it is the jury's duty to resolve conflicts in the evidence. *Valdez*, 116 S.W.3d at 99. Additionally, in resolving conflicts, the jury may choose to believe some witnesses and refuse to believe others. *Drost v. State*, 47 S.W.3d 41, 44 (Tex. App.—El Paso 2001, pet. ref'd). Under the circumstances of this case, the State's evidence regarding the value of the stolen units warranted the submission to the jury of the replacement cost definition of value. *See* Tex. Penal Code Ann. § 31.08(a)(2); *Sheppard v.*

*State*, 634 S.W.2d 953, 956 (Tex. App.—Fort Worth 1982, no pet.). We overrule issue three.

In issue four, Edwards complains that the trial court exceeded its authority by including a special order in the judgment ordering that while on parole he is to wear a t-shirt that says, "'I AM A THIEF[.]'" Edwards argues that because the trial court had no authority to place any condition on his parole, we should reform the judgment by striking the trial court's special order.

An unauthorized sentence is illegal, and an appellate court that otherwise has jurisdiction "may always notice and correct an illegal sentence." *Mizell v. State*, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003); *see also Ex parte Rich*, 194 S.W.3d 508, 512-13 (Tex. Crim. App. 2006). The Board of Pardons and Paroles has the sole authority to place conditions on a defendant's parole. *Ceballos v. State*, 246 S.W.3d 369, 373 (Tex. App.—Austin 2008, pet. ref'd); *see* Tex. Gov't Code Ann. § 508.221 (West Supp. 2015). "A Texas trial court is without authority to place any condition upon a convicted defendant's parole." *Garner v. State*, 864 S.W.2d 92, 103 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd) (citing *Gallegos v. State*, 754 S.W.2d 485, 489 (Tex. App.—Houston [1st Dist.] 1988, no pet.)).

The trial court's judgment imposes a condition on Edwards' parole, and the State concedes that the trial court exceeded its authority and recommends that we

reform the judgment and remove the condition. "When a trial court errs by purporting to impose a condition of parole in its judgment, the proper remedy is to reform the judgment to delete the unauthorized order." *Id*. We sustain Edwards' fourth issue and reform the judgment to delete the trial court's unauthorized special order. Accordingly, in cause number 13-02-01583 CR, on page two of the judgment, we delete the following language: "Furthermore, the following special findings or orders apply: WHILE ON PAROLE DEFENDANT IS TO WEAR A T-SHIRT THAT SAYS 'I AM A THIEF[.]'" We affirm the trial court's judgment as reformed.

AFFIRMED AS REFORMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on June 14, 2016
Opinion Delivered June 29, 2016
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.

15