**Affirmed and Opinion Filed December 1, 2016**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-00858-CR

**JASON DANIEL CROUCH, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 291st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1476147-U**

## MEMORANDUM OPINION

Before Justices Bridges, Lang-Miers, and Whitehill
Opinion by Justice Whitehill

A jury convicted appellant of property theft greater than $20,000 but less than $100,000. After appellant pled true to an enhancement paragraph, the trial court sentenced him to eight years imprisonment.

In two issues, appellant argues that (1) the evidence is insufficient to support his conviction because the State failed to prove that (a) he stole the vehicle or knew that it was stolen, and (b) the vehicle's value was within the $20,000-$100,000 range and (2) the court erred by submitting a jury charge with an application paragraph allowing for a non-unanimous verdict.

As discussed below, we affirm the trial court's judgment.

### I. Background

Blake Parsons was employed as a truck driver for Silverado Reconditioning Services, Inc. (Silverado). On 27 July 2014, he picked up a car-hauler with nine cars on it. He planned to

drive the hauler to Austin, Texas the next day, so he locked it and parked it in a gated commercial lot for the night. When he returned the next morning, the car hauler was missing. The hauler was found a short time later, and four of the nine cars were missing, including a 2011 BMW.

Three days later, Officer James Songer stopped at a convenience store and parked next to a "brownish . . . weird bright color" BMW SUV that had an improperly located paper tag that appeared to be fake. Specifically, the tag looked like it had been colored in with a marker, and the numbers were not generated from a computer. Songer explained that, "they don't give out written paper tags anymore, it's all computer generated." Although the BMW's driver was acting nervous and suspicious, Songer was on his way to another call and did not investigate this situation further at that time.

The convenience store was about 4.4 miles from where the hauler was stolen.

The next day, Songer was on patrol when the BMW he saw in the parking lot the day before passed him. Songer began to follow the BMW, and it "took off," "turned real sharp" and parked in a driveway in front of a closed gate. The driver fled on foot, leaving the driver's door open.

A female passenger, Heather Smith, was in the passenger seat. A teenage boy was in the back. Initially, Smith was not very cooperative. She told Songer that they had seen appellant in the trailer park and he had agreed to take them, in exchange for gas money, to sell some scrap metal. Smith became more cooperative later, and identified appellant by name.

Songer thought the vehicle was stolen, so after Smith identified appellant, he "looked him up." When he saw appellant's picture, he confirmed that appellant was the BMW's driver he saw in the parking lot. When Songer opened the BMW's trunk, he saw scrap metal, batteries,

and other items, which, based on his training and experience, was unusual for such a high-priced vehicle. A pair of gloves was found in the driver's door pocket.

At trial, Smith testified that appellant had offered her and her sixteen year old brother a ride from the trailer park to the scrap yard. Appellant drove the BMW, and Smith said she had seen him driving it for a couple of days.

Smith further said that she was sitting in the BMW's front seat and her brother was in the back. As appellant exited the trailer park, a police officer drove past them and turned around. Appellant pulled into a driveway and jumped out. Appellant had told Smith that he knew the car was stolen, and appellant's fast exit confirmed that fact for her. Smith identified a picture of the BMW that was admitted into evidence.

Jim Stratton, Silverado's owner, testified that the BMW had a blue book value of $24,500, which was the value he reported to the police. The car belonged to CarMax, but was in his care, custody, and control until he delivered it to its destination. Stratton said that CarMax had probably paid $22,000-$24,000 for the vehicle at auction, and similar cars on the market in similar condition would be priced "within just a few hundred dollars of each other."

When asked if the car's value could have been less than $20,000, Stratton replied, "Could have been zero I guess but I doubt it." When counsel continued to press him about whether the car's value was over or under $20,000, Stratton said, "I can't say how it can be under $20,000 for that type of car to tell you the truth."

Detective Greg Frageu, the case's lead investigator, testified that they did not retrieve any fingerprints "of value" or DNA from the BMW. But he explained that car thieves sometimes wear gloves, which makes obtaining fingerprints "almost impossible."

Appellant's sister, April Crouch, testified that she had never seen appellant driving a bronze BMW, but she did see Smith driving it "sometime." She admitted, however, that in the

ten months before trial, she never told the police that she had seen Smith driving the BMW. She also admitted that she had a telephone conversation with appellant while he was in jail, during which he told her to have his daughter testify that he was at his apartment with her when the offense was committed.

Both of appellant's daughters testified that they never saw appellant driving a BMW, but neither one knew where he was on July 31st (the day he left the BMW and ran from Songer).

Both Parsons and Stratton testified that they were the only people with permission to take or drive any of the cars that were on the hauler, and neither one gave appellant permission to do so.

## II.   Analysis

### A.   First Issue:  Is the evidence sufficient to support the conviction?

Appellant challenges the sufficiency of the evidence to establish that he stole the BMW or knew it was stolen and that its value was within the $20,000-$100,000 range. We, however, conclude that the evidence is sufficient for a rational jury to find beyond a reasonable doubt that appellant was guilty of theft as charged in the indictment.

#### 1.   Standard of Review and Applicable Law

We review the sufficiency of the evidence to support a conviction by viewing all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).   The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014); *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014).

This standard gives full play to the fact finder's responsibility to resolve testimonial conflicts, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App.), *cert. denied*, 136 S. Ct. 198 (2015). The fact finder is the sole judge of the evidence's weight and credibility. *See* TEX. CODE CRIM. PROC. art. 38.04; *Dobbs*, 434 S.W.3d at 170.

Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder's. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murra*y, 457 S.W.3d at 448. And we must presume that the fact finder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Id.* at 448–49.

A person commits theft if he unlawfully appropriates property with the intent to deprive the owner of that property. TEX. PENAL CODE § 31.03(a).[1] "Appropriate," in this context means "to acquire or otherwise exercise control over property." *Id.* § 31.01(4)(B).

Appropriating property is unlawful if (1) it is without the owner's effective consent, or (2) the property is stolen and the actor appropriates the property knowing it was stolen by another. *Id.* § 31.03(b)(1), (2). An "owner" is "a person who . . . has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor." *Id.* § 1.07(a)(35)(A).

---

[1] The offense, as charged here, is a third degree felony if the value of the stolen property is greater than $20,000 but less than $100,000. *See* TEX. PENAL CODE § 31.03(e)(5).

### 2. The Evidence

#### a. Identity

We first examine whether the evidence is sufficient to establish that appellant unlawfully appropriated the BMW. Neither Parsons nor Stratton gave appellant permission to drive the BMW.

And Songer saw the BMW's fake tag when he saw appellant driving it a few days after it was stolen. Appellant appeared "nervous" when Songer saw him.

The next day, appellant exited the same BMW and ran from Songer. The jury could have inferred guilt from this evidence of appellant's flight. *See Bigby v. State*, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994).

Also, Smith testified that appellant told her the BMW was stolen, and he had been driving it for several days.

Similarly, the jury could also infer guilt from Crouch's testimony that appellant asked for his daughter to provide an alibi. *See Padilla v. State*, 326 S.W.3d 195, 201 (Tex. Crim. App. 2010) (consciousness of guilt can be inferred by lying about events surrounding crime).

The BMW's contents were unusual, given the type of vehicle, and the gloves that were found in the driver's door pocket were suspicious because Frageu explained that car thieves frequently wear gloves.

We conclude that the cumulative force of all of the incriminating circumstances is sufficient to support the jury's finding that appellant unlawfully appropriated the BMW.

#### b. Property Value

The evidence is also sufficient to show the BMW's value. "Value" means the property's fair market value at the time and place of the offense. *See* TEX. PENAL CODE ANN. § 31.08(a).

Fair market value is the amount the property would sell for in cash, given a reasonable time for selling it. *Keeton v. State*, 803 S.W.2d 304, 305 (Tex. Crim. App. 1991).

Value may be proved in a variety of ways, including through the property owner's testimony. *Id.*; *see Sullivan v. State*, 701 S.W.2d 905, 908 (Tex. Crim. App. 1986). When a property owner testifies, he can give his "best knowledge" of the property's value, and there is a presumption that he is giving a fair market value estimate. *Id.*

Here, Stratton, the owner, testified that the BMW's blue book value was $24,500, which value he reported to the police. This testimony was sufficient to establish value, and speculation on cross-examination about whether CarMax may have purchased the BMW for less does not render the evidence insufficient. The jury resolved any conflicts in the evidence, and we defer to their determination. *See Dobbs*, 434 S.W.3d at 170.

Therefore, we conclude that the evidence is sufficient to support appellant's conviction, and resolve his first issue against him.

**B.      Second Issue:  Did the charge's application paragraph allow the jury to reach a non-unanimous verdict?**

Appellant argues that the charge's application paragraph did not require unanimity as to whether (i) he stole the vehicle or appropriated it from another knowing it was stolen, (ii) Stratton or Silvarado owned the vehicle, and (iii) whether the stolen motor vehicle was the BMW or the car-hauler.

As discussed below, we conclude that there was no error because these aspects of the charge do not require unanimity.

**1.      Standard of Review and Applicable Law**

We review jury charge error in two steps. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015). First, we determine whether error exists in the charge. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). Second, if there is error, we review the record to

determine whether the error caused sufficient harm to require reversing the conviction. *Id.* The degree of harm needed for reversal depends on whether the appellant preserved the error by objecting to the charge. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). When, as here, charge error is not preserved, reversal is not required unless the resulting harm is egregious. *Id*.

Texas law requires a unanimous jury verdict in all criminal cases. *See* TEX. CODE CRIM. PROC. art. 36.29(a); *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011). This means that the jury must agree upon the same criminal offense. *See Ngo*, 175 S.W.3d at 745; *see also Saenz v. State*, 451 S.W.3d 388, 390 (Tex. Crim. App. 2014) (jury must agree on all essential elements of a single offense).

### 2. The Charge

The charge instructed the jury that their verdict had to be unanimous. Regarding the charged offense, theft, the application paragraph stated:

> If you find from the evidence beyond a reasonable doubt that on or about the 31st day of July 2014, in Dallas County, Texas, the Defendant, did unlawfully appropriate property, namely: exercise control over property, to wit: A MOTOR VEHICLE, of the value of at least $20,000 but less than $100,000, without the effective consent of JIM STRATTON OR SILVERADO RECONDITIONING SERVICES INC. the owner of said property, with intent to deprive the said owner of the said property, and further, said defendant did unlawfully appropriate property, namely, exercise control over property, to wit: A MOTOR VEHICLE, of the value of at least $20,000 but less than $100,000 with the intent to deprive the owner of the property, JIM STRATON AND SILVERADO RECONDITIONING SERVICES INC., and the said property was stolen and the defendant did appropriate the said property, knowing that the property was stolen by another then you will find the Defendant guilty of the offense of theft.

Thus, the jury was given two alternative means by which the theft could have been committed— either by directly taking the BMW or receiving it from someone who stole it.

Theft requires that the accused appropriated property unlawfully with the intent to deprive the owner of that property. TEX. PENAL CODE § 31.03(a). The manner in which he came

–8–

to possess that property, however, is not an essential element of the crime. *See Chavez v. State*, 843 S.W.2d 586, 588 (Tex. Crim. App. 1992).

Therefore, while the jury must unanimously agree about the offense itself, "they need not be unanimous about the specific manner and means of how that offense was committed." *Young v. State*, 341 S.W.3d 417, 423 (Tex. Crim. App. 2011). As the court of criminal appeals recently observed, "[i]n the jury-unanimity context, we look to the gravamen of the offense to determine whether the gravamen is the result of conduct, the nature of conduct, or the circumstances surrounding the conduct." *Kent v. State*, 483 S.W.3d 557, 561 (Tex. Crim. App. 2016). Here, the gravamen of the offense is appropriation of property without the owner's consent. Thus, allowing the jury to choose between alternative manner and means of committing the theft does not violate the unanimity requirement. *See Young*, 341 S.W.3d at 423.

Likewise, providing the jury with two different names for the property owner was not error. Specifically, the statute requires that property appropriation be without the owner's consent. TEX. PENAL CODE § 31.03(b)(1). "Owner," in this context means as "a person who . . . has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor." TEX. PENAL CODE § 1.07(a)(35)(A). And ownership may be alleged in either the actual owner or special owner of the property. *King v. State*, No. 05-12-00842-CR, 2014 WL 310113, at *4 (Tex. App.—Dallas Jan. 28, 2014, pet. ref'd) (mem. op.).

Furthermore, the State is only required to prove that the person alleged as the owner in the indictment is the same as the person shown by the evidence. *Byrd v. State*, 336 S.W.3d 242, 251–252 (Tex. Crim. App. 2011). There is no argument here concerning an absence of such proof. And jury unanimity was not required because the name of the owner is not a substantive element of a theft offense. *See* TEX. PENAL CODE § 31.03; *Saenz*, 451 S.W.3d at 390 (jury must agree on all essential elements of a single offense).

Finally, we reject appellant's argument that the failure to specify whether the property was the BMW or the truck-hauler violates the unanimity requirement. The charge described the property as a "motor vehicle." The entire trial, including the arguments and evidence, was about theft of a BMW, so there was no question about which motor vehicle was at issue.[2] Appellant cites no authority, nor have we found any, for the premise that the court must specify the type of motor vehicle in the charge before the jury can find the offense's "property" element.

Here, the charge instructed the jury on the offense's elements: (i) unlawful appropriation of property with a value of at least $20,000 but less than $100,000, (b) without the owner's consent. *See* TEX. PENAL CODE §§ 31.03 (a), (e)(5). The jury was required to unanimously agree on these essential elements, nothing more. *See Saenz*, 451 S.W.3d at 390.

We thus resolve appellant's second issue against him.

### III. Conclusion

Having resolved all of appellant's issues against him, we affirm the trial court's judgment.

/Bill Whitehill/
_____
BILL WHITEHILL
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
150858F.U05

---

[2] Because the case centered on the BMW, there was no need to adduce evidence on the hauler's value.



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JASON DANIEL CROUCH, Appellant

No. 05-15-00858-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 291st Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1476147-U.
Opinion delivered by Justice Whitehill.
Justices Bridges and Lang-Miers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered December 1, 2016.